UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

NICHOLAS DAYTER,

                                        Plaintiff,

                                                                    1:22-cv-01246
v.                                                                  (TJM/TWD)

DANIELLE PLOOF,

                                        Defendants.

_____

APPEARANCES:

NICHOLAS DAYTER
*Plaintiff, pro se*
1019 Dean Street
Schenectady, NY 12309

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

        Nicholas Dayter ("Plaintiff"), proceeding *pro se*, commenced this action against Danielle

Ploof ("Defendant") on November 22, 2022, and in lieu of paying the Northern District of New

York's filing fee, seeks leave to proceed *in forma pauperis* ("IFP").  (Dkt. Nos. 1, 2.)

## I.      IFP APPLICATION

        Plaintiff declares he is unable to pay the filing fee for this action.  (Dkt. No. 2.)  The

undersigned has reviewed Plaintiff's IFP application and determines he financially qualifies to

proceed IFP.  Therefore, Plaintiff's IFP application is granted.[1]

_____

[1]  Plaintiff is advised that he will still be required to pay any costs and fees that he may incur in
this matter, including, but not limited to, any copying fees or witness fees.

## II.    SCREENING OF THE COMPLAINT

### A.    Legal Standard

Under Section 1915(e), the Court must dismiss a complaint filed IFP if it determines that

the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted;

or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).[2]

The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter

jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).  While the law mandates dismissal on any of these

grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66,

72 (2d Cir. 2009), and interpret them to raise the "strongest claims that they *suggest*."  *Triestman

v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006).

A claim is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v.

Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a

finding of factual frivolousness is appropriate when the facts alleged rise to the level of the

irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous'

when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an

indisputably meritless legal theory.").

To survive dismissal for failure to state a claim, a complaint must contain a short and

plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).

This short and plain statement of the claim must be "plausible on its face."  *Twombly*, 550 U.S. at

---

[2]  Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted.  *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation."  *Id.*  It must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

B.    **Background**[3]

Plaintiff claims that on November 18, 2022, Defendant violated the First Amendment and committed "Liberal Slander and Defimation of Character" against him which caused him physical injuries and "life threats of being killed."  (Dkt. No. 1 at ¶ 4.)  She tried to "destroy" his life. *Id*.  "She made threats and harassment" and he "had to get an order of protection."  *Id*. Plaintiff claims Defendant "posted something on social media which slander me and defimation of my charcter which caused me phyiscal harm and danger and phyiscal injruy."  *Id*.  The complaint seeks damages in the amount of $150,000 or to "own her home."  *Id*. at ¶ 6.

---

[3]  Excerpts from the complaint are reproduced exactly as they appear in the original.  Errors in spelling, punctuation, and grammar have not been corrected or noted.

### C.    Analysis

Plaintiff purportedly brings this action pursuant to 42 U.S.C. § 1983.  (Dkt. No. 1.)
Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws of the United States."  *Wilder v. Virginia Hosp.
Ass'n*, 496 U.S. 498, 508 (1990).  Section 1983 does not create any independent substantive
right, but rather "provides a civil claim for damages" to "redress . . . the deprivation of [federal]
rights established elsewhere."  *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999); *Sykes v.
James*, 13 F.3d 515, 519 (2d Cir. 1993).  "To state a valid claim under § 1983, the plaintiff must
allege that the challenged conduct (1) was attributable to a person acting under color of state law,
and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or
laws of the United States."  *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).

The requirement that the defendant acted under "color of state law" is jurisdictional.
*Bennett v. Bailey*, 2020 WL 5775940, at *2 (N.D.N.Y. Aug. 17, 2020), *report-recommendation
adopted*, 2020 WL 5775231 (N.D.N.Y. Sept. 28, 2020).  Private parties are not generally
considered to be state actors.  *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013).  Private
conduct is simply beyond the reach of Section 1983 "no matter how discriminatory or wrongful
that conduct may be."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

Here, although Plaintiff references the First Amendment, he has alleged no facts showing
how Defendant acted as a state actor when she allegedly injured him.  Because Defendant is a
private citizen and Plaintiff's allegations do not involve conduct the Court construes to be joint
activity with the State, Plaintiff has not stated a plausible claim under Section 1988 for violation
of the First Amendment.  Therefore, the Court recommends dismissing Plaintiff's claims under
Section 1983 against Defendant for failure to state a claim upon which relief may be granted.

Furthermore, Plaintiff's allegations of libel, slander, and defamation do not confer federal question jurisdiction. *See Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (defamation is an issue of state law); *Sabin v. Arthurs*, 2012 WL 6098266, at *2 (N.D.N.Y. Oct. 31, 2012) ("[B]ecause defamation (libel and slander) . . . are state law torts, there is no federal question jurisdiction under 28 U.S.C. § 1331."); *report-recommendation adopted*, 2012 WL 6098023 (N.D.N.Y. Dec. 7, 2012); *Gause v. Chase Home Fin. LLC*, 2009 WL 4984346, at *2 (E.D.N.Y. Dec. 9, 2009) (neither libel nor slander confers federal subject matter jurisdiction). Plaintiff's complaint, at best, alleges possible state law tort claims. Therefore, the Court finds there is no federal question jurisdiction.

To properly allege diversity jurisdiction, Plaintiff must allege (1) diversity of citizenship between the parties, and (2) an amount in controversy that exceeds $75,000. *See* 28 U.S.C. § 1332(a). Here, Plaintiff states he is a resident of Albany County and provides an address in Schenectady, New York. (Dkt. No. 1 at ¶ 2, Dkt. No. 1-1.) He indicates Defendant is a resident of Washington County and provides an address in Barre, Vermont. (Dkt. No. 1 at ¶ 3, Dkt. No. 1-1.) Even assuming diversity of citizenship exists between Plaintiff and Defendant,[4] Plaintiff fails to satisfy the amount in controversy requirement. "[A] plaintiff invoking federal jurisdiction must demonstrate a reasonable probability that the amount-in-controversy requirement is satisfied[.]" *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017). Although courts recognize a "presumption that the face of the complaint is a good faith representation of the actual amount in controversy," that presumption is rebutted where there is "legal certainty that [the plaintiff] could not recover the amount alleged or that the damages

---

[4] On December 12, 2022, Text Orders mailed to Plaintiff's address on file were returned as "Undeliverable –Vacant—Unable to Forward." (Dkt. Nos. 4, 5, 6.)

alleged were feigned to satisfy jurisdictional minimums." *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006).

Under New York law, damages for defamation, libel, and slander can include both "out-of-pocket loss" and "impairment of reputation and standing in the community, personal humiliation and mental anguish and suffering." *Gousse v. Giardullo*, 2021 WL 429970, at *2 (E.D.N.Y. Feb. 8, 2021). Here, Plaintiff requests $150,000 in damages due to an undisclosed physical injury, what he "lost", and "danger of being killed." (Dkt. No. 1 at ¶¶ 5-6.) Alternatively, he asks to "own her home." *Id*. at ¶ 6. Plaintiff, however, has not alleged any facts showing an out-of-pocket loss, damages to his reputation, or any manifestations of his alleged mental anguish. Thus, even accepting all facts alleged as true, Plaintiff's damages are speculative and fail to meet the amount in controversy for diversity jurisdiction. *See Trisvan v. Burger King Corp.*, 2020 WL 1975236, at *2 (E.D.N.Y. Apr. 24, 2020) ("The amount in controversy must be non-speculative in order to satisfy the statute and conclusory allegations that the amount-in-controversy requirement is satisfied are insufficient."). Therefore, the Court finds there is no diversity jurisdiction.

Moreover, even if Plaintiff could invoke the Court's diversity jurisdiction, his claims for defamation, libel, and slander, as currently alleged in his complaint, fail to state a claim for relief. A claim for "defamation" is an umbrella term that incorporates the "twin torts of libel and slander." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001). "Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012). In assessing whether a defamation claim has been pled with sufficient particularity, courts look to "whether said complaint references the alleged defamatory statement, identifies who made the statement, when

it was made, the context in which it was made, whether it was made orally or in writing and whether it was made to a third party." *Nickerson v. Communication Workers of America Local 1171*, 2005 WL 1331122, at *7 (N.D.N.Y. May 31, 2005); *see also Muzio v. Incorporated Village of Bayville*, 2006 WL 39063, at *8 (E.D.N.Y. Jan. 3, 2006).

Notably, Plaintiff's complaint does not identify the allegedly false and defamatory language at issue. "Vagueness as to the complained-of conduct is particularly inappropriate when pleading a defamation claim" because "the complaint must afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 (2d Cir. 2017). Because Plaintiff has not alleged a specific statement made by Defendant or why the statement was allegedly false, he has failed to properly plead a defamation, slander, or libel claim. Absent these basic details, the Court is left with "an unadorned, the-defendant-harmed-me accusation." *See Iqbal*, 556 U.S. at 678.

Accordingly, the undersigned recommends dismissing Plaintiff's complaint without prejudice.[5] *Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018) ("[D]ismissal for subject matter jurisdiction must be without prejudice."). Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to replead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). "[L]ack of subject matter jurisdiction is a substantive defect that cannot be cured by better pleading." *Moran v. Proskauer Rose LLP*,

---

[5]  In light of the foregoing recommendation, Plaintiff is not prevented from filing a complaint in an appropriate state court, should he wish to do so. However, the undersigned makes no finding as to whether Plaintiff can successfully or properly bring the complaint in state court.

2017 WL 3172999, at *3 (N.D.N.Y. July 26, 2017).  In deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court recommends granting Plaintiff leave to amend.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.  Any such amended complaint should specifically identify the legal theory or theories that form the basis for his claim, and specify (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.  Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into the amended complaint by reference.  Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against Defendant and must demonstrate that a case or controversy exists between Plaintiff and Defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction.

### D.    Local Rules

Under this Court's rules, an unrepresented litigant is under a duty to inform the Court of any address changes in writing.  L.R. 10.1(c)(2).  For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes.  Upon review of the docket, Text Orders mailed to Plaintiff's address on file were returned as "Undeliverable – Vacant – Unable to Forward."  (Dkt. Nos. 4, 5, 6.)  Plaintiff must promptly notify the Clerk's Office, in writing, of any change in his address; his failure to do so may result in the dismissal of this action.

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**ORDERED** that Plaintiff must file a **CHANGE OF ADDRESS** within fourteen days of the date of this Order and Report-Recommendation, and he must continue to submit any address changes to the Court and all parties, in writing, of any change in his address; failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of the action; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report.[6]  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated:  December 16, 2022
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[6]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2020 WL 5775940
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew S. BENNETT and
Kristina M. McDonald, Plaintiffs,

v.

Don BAILEY and Route 11 Motorsports, Defendants.

5:20-CV-903 (GTS/ATB)
|
Signed 08/17/2020

**Attorneys and Law Firms**

ANDREW S. BENNETT and KRISTINA M. McDONALD,
Plaintiffs Pro Se.

**ORDER and REPORT-RECOMMENDATION**

ANDREW T. BAXTER, United States Magistrate Judge

 **\*1** The Clerk has sent to the court for review a complaint
brought pursuant to 42 U.S.C. § 1983, filed by plaintiffs
Andrew S. Bennett and Kristina M. McDonald. (Dkt. No.
1). Plaintiffs have also applied to proceed in forma pauperis
("IFP"). [1] (Dkt. No. 2).

[1]     Both plaintiffs have signed the complaint and
        the IFP application and are each representing
        themselves. Because this court is recommending
        dismissal for lack of jurisdiction, the court will not
        require plaintiffs to file separate IFP applications.

**I. IFP Application**

Plaintiffs declare in their IFP application that they are unable
to pay the filing fee. (Dkt. No. 2). After reviewing his
application, this court finds that plaintiffs are financially
eligible for IFP status.

However, in addition to determining whether plaintiffs meet
the financial criteria to proceed IFP, the court must also
consider the sufficiency of the allegations set forth in the
complaint in light of 28 U.S.C. § 1915, which provides that
the court shall dismiss the case at any time if the court
determines that the action is (i) frivolous or malicious; (ii)
fails to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune
from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must
consider whether the complaint lacks an arguable basis in
law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).
Dismissal of frivolous actions is appropriate to prevent abuses
of court process as well as to discourage the waste of judicial
resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505
F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to
show liberality toward *pro se* litigants, and must use extreme
caution in ordering *sua sponte* dismissal of a *pro se* complaint
before the adverse party has been served and has had an
opportunity to respond, the court still has a responsibility
to determine that a claim is not frivolous before permitting
a plaintiff to proceed. *Fitzgerald v. First East Seventh St.
Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that
a district court may dismiss a frivolous complaint *sua sponte*
even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint
must contain sufficient factual matter, accepted as true, to
state a claim that is "plausible on its face." *Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals
of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." *Id.* (citing *Bell Atl.
Corp.*, 550 U.S. at 555).

**II. Complaint**

Plaintiffs allege that on March 17, 2020, they purchased a
car from the defendant Don Bailey and his company Route
11 Motorsports. (Complaint ("Compl.") ¶ 4 at p.2 (Facts)).
Plaintiffs claim that defendant Bailey gave them a "90 Day
Warranty" which he is not honoring. (*Id.*) Two days after
they purchased the vehicle, the motor began "knocking," and
plaintiffs contacted Don Bailey, who has failed to rectify the
situation. (*See* Compl. *generally* ¶ 4 at pp.3-6). Plaintiffs seek
a full refund of the purchase price of the vehicle and damages
for pain and suffering for a total of $10,500. (Compl. ¶¶ 5-6).

**III. Subject Matter Jurisdiction**

**A. Legal Standards**
 **\*2** Federal courts are courts of limited jurisdiction, have
only the power that is authorized by Article III of the
Constitution, and may only preside over cases that fall
within the subject matters delineated by Congress. *Bender v.*

*Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (citation omitted). The court must determine whether it has subject matter jurisdiction, and must dismiss a case at any stage of the proceedings if it determines that jurisdiction is lacking. *Cave. v. East Meadow Union Free School Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).

In addition, federal courts have an "independent obligation" to consider the presence or absence of subject matter jurisdiction sua sponte. *Leopard Marine & Trading, Ltd. v. Easy Street, Ltd.*, 896 F.3d 174, 181 (2d Cir. 2018) (quoting *In re Quigley Co., Inc.*, 676 F.3d 45, 50 (2d Cir. 2012). Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agriculture, Inc. v. Perry*, No. 12 Civ. 6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust*, No. 09 Civ. 7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013) (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 434-35 (2011)).

Federal question jurisdiction pursuant to 28 U.S.C. § 1331 provides a basis for jurisdiction when the plaintiff brings a civil action that arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction is present when an action is between citizens of different states, and when the amount in controversy is in excess of $75,000.00. 28 U.S.C. § 1332(a)(1).

**B. Application**

**1. Section 1983**

**a. Legal Standards**

In order to bring a civil rights action under 42 U.S.C. § 1983, the plaintiff must establish that a defendant, who acts under color of state law, has caused the deprivation of a right protected by the federal constitution or laws. 42 U.S.C. § 1983. A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).

The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200,

2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)). Private conduct is simply beyond the reach of section 1983 " 'no matter how discriminatory or wrongful" that conduct may be." *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

**b. Application**

The defendants in this action are a private individual and what appears to be his car dealership. There is no indication that either of the defendants acts under color of state law. Therefore there is no jurisdiction under section 1983 for the plaintiffs' case. The court realizes that the plaintiffs are pro se and will attempt to determine whether there is any other jurisdictional basis for plaintiffs to bring an action in this court pursuant to federal question or diversity jurisdiction. [2]

[2]  A pro se plaintiff's pleadings are interpreted to raise the strongest arguments that they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

**2. Magnuson-Moss Warranty—Federal Trade Commission Act ("MMWA"), 15 U.S.C. § 2301**

**a. Legal Standards**

**\*3**  The MMWA, is also known as the federal "lemon law." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 222 (2d Cir. 2017). The MMWA "is a remedial statute designed 'to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products.' " *Id.* (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir. 1990)) (quoting 15 U.S.C. § 2302(a)). The MMWA allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with ... a written warranty [or] implied warranty ... [to] bring suit for damages and other legal and equitable relief.' " *Id.* (quoting

15 U.S.C. § 2310(d)(1)). However, the MMWA provides for federal jurisdiction under certain circumstances. *Id.* MMWA claims may be brought in federal court only if the amount in controversy meets or exceeds $50,000 (exclusive of interests and costs), computed on the basis of all claims in the action. *Id.* (citing § 2310(d)(3)(B)).

#### b. Application

Plaintiffs in this action allege that the value of the car was $7,000.00 and their "pain and suffering" was worth another $3,500.00 for a total of $10,500.00 in damages. (Compl. ¶¶ 5-6). Thus, even if plaintiffs could make a claim under the MMWA for the failure of defendants to abide by their warranty, and even if they had cited the appropriate statute, plaintiffs cannot meet the jurisdictional amount for bringing an MMWA claim in federal court.

### 3. Contract Claims

#### a. Legal Standards

Contract actions are generally state law claims, "governed by state law standards and analyzed using the familiar elements applied in a New York breach of contract action." *Liana Carrier Ltd. v. Pure Biofuels Corporation*, 672 F. App'x 85, 92 (2d Cir. 2016). Contractual obligations, are inherently creatures of state law. *Eugene Iovine, Inc. v. City of New York*, No. 98 Civ. 2767, 1999 WL 4899, at *2 (S.D.N.Y. Jan. 5, 1999) (citing *Gully v. First National Bank in Meridian*, 299 U.S. 109, 115 (1939)). "[A] complaint alleging a violation of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.' " *Id.* (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 817 (1986)).

#### b. Application

Plaintiffs in this case essentially argue that defendant Bailey did not honor his agreement to fix the plaintiffs' car and now does not return their calls or texts. (Compl. ¶ 4 at pp.5-6). As stated above, plaintiffs do not meet the jurisdictional minimum for an MMWA claim. To the extent that plaintiffs

are trying to state a contract claim or a simple warranty claim, there is no jurisdiction in federal court for this action, given the facts of plaintiffs' case. While federal courts decide state law claims, those claims are generally either supplemental to a federal claim [3] or brought under diversity jurisdiction. There are no viable federal claims in this action. Thus, supplemental jurisdiction does not apply. Plaintiffs and defendants are citizens of the same state, and the amount in controversy is less than the jurisdictional amount of $75,000.00. Thus, there is no diversity jurisdiction. Because there is no jurisdiction to decide plaintiffs' claims, I must recommend dismissal.

[3]     28 U.S.C. § 1367(a) provides that

in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

### IV. Opportunity to Amend

#### A. Legal Standards

**\*4** Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiffs' causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

#### B. Application

There is no subject matter jurisdiction for plaintiffs to bring this action in federal court. It does not appear that any amendment or additional pleading will cure the defects in jurisdiction. Because there is no subject matter jurisdiction, the court will recommend dismissing the action without prejudice to plaintiffs bringing their claims in the appropriate state court. However, such dismissal should be without the opportunity to amend since plaintiffs will not be able to cure the deficiency in their complaint with better pleading.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiffs' application to proceed IFP (Dkt. No. 2) is **GRANTED ONLY TO THE EXTENT NECESSARY TO FILE THIS ACTION**, and it is

**RECOMMENDED**, that the plaintiffs' complaint be **DISMISSED WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JURISDICTION, BUT WITHOUT THE OPPORTUNITY TO AMEND**, and it is.

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation on plaintiffs by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Slip Copy, 2020 WL 5775940

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 5775231
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Andrew S. BENNETT; and
Kristina M. McDonald, Plaintiffs,

v.

Don BAILEY; and Route 11 Motorsports, Defendants.

5:20-CV-0903 (GTS/ATB)
|
Signed 09/28/2020

**Attorneys and Law Firms**

ANDREW S. BENNETT and KRISTINA M. McDONALD, Plaintiffs, Pro Se, 1137 Roberts Hollow Road, Lowman, New York 14861.

### DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

 **\*1** Currently before the Court, in this *pro se habeas* breach-of-contract action filed by Andrew S. Bennett and Kristina M. McDonald ("Plaintiffs") against Don Bailey and Route 11 Motorsports ("Defendants") pursuant to 42 U.S.C. § 1983, is United States Magistrate Judge Andrew T. Baxter's Report-Recommendation recommending that Plaintiffs' Complaint be dismissed without prejudice for lack of subject-matter jurisdiction pursuant to 28 U.S.C. § 1915 and that such dismissal should be without prior leave to amend. (Dkt. No. 3.) Plaintiffs have not filed an objection to the Report-Recommendation, and the time in which to do so has expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein, including Magistrate Judge Baxter's thorough Report-Recommendation, the Court can find no clear-error in the Report-Recommendation. [1] Magistrate Judge Baxter employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons set forth therein, and Plaintiffs' Complaint is dismissed without prejudice for lack of subject-matter jurisdiction.

[1]     When no objection is made to a report-recommendation, the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Baxter's Report-Recommendation (Dkt. No. 3) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED without prejudice for lack of subject-matter jurisdiction.**

**All Citations**

Slip Copy, 2020 WL 5775231

---

End of Document                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 6098266
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jon SABIN, Plaintiff,

v.

Jason ARTHURS, John Dorman, Gillian Dorman,
Dorrie O'Meara individually and as principal of
O'Meara Law Firm, Julie Hutchison, individually
and as Chelsea Hutchison Foundation, Inc.,
Amanda White, Joseph Berardelli, Caitlin Howell,
Jeffrey Howell and Glenn Curry, in his individual
capacity and as an employee of WATN 1240 and
Community Broadcasters, LLC., Defendants.

No. 7:12–CV–1519 (GTS/TWD).
|
Oct. 31, 2012.

**Attorneys and Law Firms**

Jon Sabin, South Colton, NY, pro se.

***ORDER and REPORT–RECOMMENDATION***

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge.

**\*1** The Clerk has sent this *pro se* Complaint together
with an application to proceed *in forma pauperis* to the
Court for review. (Dkt. Nos. 1 and 2.) Alleging diversity
jurisdiction under 28 U.S.C. § 1332(a), Plaintiff's Complaint
purports to assert claims sounding in defamation (libel and
slander) and tortious interference with business relationships
against numerous defendants. (*See generally* Dkt. No. 1.)
The Court finds that Plaintiff is entitled to proceed *in forma
pauperis*. However, for the reasons discussed below, the
Court recommends that Plaintiff's Complaint be dismissed
*sua sponte* for lack of subject matter jurisdiction pursuant to
28 U.S.C. § 1915(e)(2)(B)(i)-(iii) and Federal Rule of Civil
Procedure 12(h)(3), with leave to amend.

## I. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

After reviewing Plaintiff's *in forma pauperis* application (Dkt.
No. 2), the Court finds that Plaintiff may properly proceed
with this matter *in forma pauperis.*

## II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Even when a plaintiff meets the financial criteria for *in forma
pauperis,* 28 U.S.C. § 1915(e) directs that when a plaintiff
proceeds *in forma pauperis,* "the court shall dismiss the case
at any time if the court determines that ... the action ... (i)
is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must
look to see whether the complaint lacks an arguable basis
either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319,
325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is
frivolous when either: (1) the factual contentions are clearly
baseless such as when the claims are the product of delusion
or fantasy; or (2) the claim is based on an indisputably
meritless legal theory." *Livingston v. Adirondack Beverage
Co.,* 141 F.3d 434, 437 (2d Cir.1998) (citations and internal
quotation marks omitted). Although extreme caution should
be exercised in ordering *sua sponte* dismissal of a *pro se*
complaint before the adverse party has been served and the
parties have had an opportunity to respond, *Anderson v.
Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), the court still has a
responsibility to determine that a claim is not frivolous before
permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully,*
943 F.2d 259, 260 (2d Cir.1991) (per curiam) (holding that a
district court has the power to dismiss a complaint *sua sponte*
if the complaint is frivolous).

Where a plaintiff proceeds *pro se,* the pleadings must be
read liberally and construed to raise the strongest arguments
they suggest. *Sealed Plaintiff v. Sealed Defendants,* 537 F.3d
185, 191 (2d Cir.2008) (citation omitted). A *pro se* complaint
should not be dismissed "without giving leave to amend at
least once when a liberal reading of the complaint gives any
indication that a valid claim might be stated." *Gomez v. USAA
Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (citation and
internal quotation marks omitted).

## II. SUBJECT MATTER JURISDICTION

**\*2** The jurisdiction of the federal courts is limited. A
plaintiff must establish that the court has subject matter

jurisdiction. *See, e.g., Rene v. Citibank NA,* 32 F.Supp.2d 539, 542 (E.D.N.Y.1999). If a court determines at any time that it lacks subject matter jurisdiction, the action must be dismissed. Federal Rule of Civil Procedure 12(h)(3); *see also Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). Plaintiff has alleged that he is a citizen of the State of New York for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a). (Dkt. No. 1 at § 11.) However, he has also alleged that Defendants Glenn Curry and WATN 1240 are citizens of the State of New York.

Federal diversity jurisdiction under 28 U.S.C. § 1332(a) is available only when there is complete diversity—when each plaintiff's citizenship is different from the citizenship of each defendant. *See Briarpatch Ltd. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 302 (2d Cir.2004), *cert. denied,* 544 U.S. 949, 125 S.Ct. 1704, 161 L.Ed.2d 525 (2005) (citing *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996)). Inasmuch as Plaintiff is a citizen of New York State and Defendants Curry and WATN 1240 are alleged to be citizens of New York State as well, there is no subject matter jurisdiction under 28 U.S.C. § 1332(a), even though all of the other Defendants are alleged to be citizens of states other than New York. (Dkt. No. 1 at §§ 13, 15–20 .) Furthermore, because defamation (libel and slander) and tortious interference with business relationship claims are state law torts, there is no federal question jurisdiction under 28 U.S.C. § 1331. [1] *See Sadallah v. City of Utica,* 383 F.3d 34, 38 (2d Cir.2004) (defamation is an issue of state law); *Bertuglia v. City of New York,* 839 F.Supp.2d 703, 712 (S.D.N.Y.2012) (identifying tortious interference with contract and economic advantage claims as state law claims). Because of the absence of subject matter jurisdiction, I recommend the *sua sponte* dismissal of Plaintiff's Complaint. However, I recommend that Plaintiff be granted leave to serve an amended complaint stating a proper basis for the Court's jurisdiction.

[1]    28 U.S.C. 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In the absence of diversity jurisdiction, "it is essential to jurisdiction that a substantial federal question should be presented." *Hagans v. Lavine,* 415 U.S. 528, 537, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), *superceded by statute on other grounds.*

**ACCORDING,** it is hereby

**ORDERED,** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED;** and it is

**RECOMMENDED,** that Plaintiff's Complaint be dismissed *sua sponte* for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) and Federal Rule of Civil Procedure 12(h)(3); and it is further

**RECOMMENDED,** that Plaintiff be granted leave to serve an amended complaint stating a proper basis for the Court's jurisdiction; and it is further

**RECOMMENDED,** that in the event Plaintiff is authorized to, and thereafter files a timely amended complaint, all of Plaintiff's claims against the Defendants named therein are to be included in the amended complaint, with the amended complaint becoming the operative pleading in the case.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85 (2d cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure 72.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 6098266

---

End of Document    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 6098023
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Jon SABIN, Individually and as CEO of
Seizure Alert Dogs for Life, Inc., Plaintiff,

v.

Jason ARTHURS; John Dorman; Gillian Dorman; Dorrie
O'Meara; individually and as principal of O'Meara Law
Firm; Julie Hutchison, individually and as Chelsea
Hutchison Foundation, Inc.; Amanda White; Joseph
Berardelli; Caitlin Howell; Jeffrey Howell; Glenn Curry,
in his individual capacity and as an employee of WATN
1240; and Community Broadcasters, LLC, Defendants.

No. 7:12–CV–1519 (GTS/TWD).
|
Dec. 7, 2012.

**Attorneys and Law Firms**

Jon Sabin, South Colton, NY, pro se.

### DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

 **\*1** Currently before the Court, in the above-captioned action
for libel and slander filed by Jon Sabin ("Plaintiff") against
the eleven above-captioned Defendants pursuant to 28 U.S.C.
§ 1332(a), is United States Magistrate Judge Therese Wiley
Dancks' Report–Recommendation recommending that this
action be dismissed *sua sponte* for lack of subject matter

jurisdiction pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) and
Fed.R.Civ.P. 12(h)(3), unless Plaintiff files a timely Amended
Complaint curing the defects in his Complaint. (Dkt. No. 3.)

Plaintiff has not filed an Objection to the Report–
Recommendation, and the deadline by which to do so
has expired. (*See generally* Docket Sheet.) After carefully
considering the matter, the Court can find no error with
Magistrate Judge Dancks' Report–Recommendation, clear
or otherwise. As a result, the Report–Recommendation is
accepted and adopted in its entirety for the reasons stated
therein. (Dkt. No. 3.)

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–
Recommendation (Dkt. No. 3) is ***ACCEPTED*** and
***ADOPTED* in its entirety;** and it is further

**ORDERED** that this action shall be ***sua sponte DISMISSED***
without further Order of this Court, pursuant to 28 U.S.C.
§ 1915(e)(2)(B)(i)-(iii) and Fed.R.Civ.P. 12(h)(3), **without
prejudice to refiling in state court,** unless, within **THIRTY
(30) DAYS** of the date of this Decision and Order, Plaintiff
submits an Amended Complaint that cures the defects in his
Complaint (Dkt. No. 1), which were identified by Magistrate
Judge Dancks in her ReportRecommendation (Dkt. No. 3). In
the event that Plaintiff files an Amended Complaint within
thirty (30) days from the date of this Decision and Order, the
Clerk is directed to return the file to Magistrate Judge Dancks
for further review.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 6098023

---

**End of Document**                      © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 4984346
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. New York.

Desiveno GAUSE, Plaintiff,

v.

CHASE HOME FINANCE LLC, Commercial
Mutual Insurance Company, Estate of Della
L. Gause, Lunt Agency Inc., Defendants.

No. 09-CV-4886 (JS).
|
Dec. 9, 2009.

**Attorneys and Law Firms**

Desiveno Gause, Wallkill, NY, for Plaintiff.

No appearances for Defendants.

*MEMORANDUM AND ORDER*

SEYBERT, District Judge.

 **\*1** Presently pending before the Court is *pro se* Plaintiff Desi Gause's Complaint, accompanied by an application to proceed *in forma pauperis*. The Court grants Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a), but dismisses the Complaint pursuant to Fed.R.Civ.P. 12(h)(3).

*BACKGROUND*

Plaintiff, who is currently incarcerated in New York, claims that his mother, Della Gause, purchased property in Wyandanch, New York, and that he and his family have lived there since 1998. (Compl.1). Plaintiff identifies Defendant Commercial Mutual Insurance Company as located in Kingston, New York, and alleges that his mother was required to purchase two kinds of property insurance ("PMI, and Home Owners") when buying the property in Wyandanch. (Compl.1). It appears from the Complaint that at some point between 1998 and this lawsuit, Della Gause passed away.

Plaintiff alleges that he is the "heir of the deceased (Della Gause) who is my mother." (Compl.1).

Plaintiff alleges that Chase Bank illegally collected monthly payments from the family after Della Gause passed away, began an "illegal foreclosure process," that the "private mortgage insurance protects the creditor and the debtor in case of an emergency such as this one," and that Defendants "failed to mitigate the proper procedures pertaining to death, insurance and the estate of the deceased and family ..." (Compl.2). Plaintiff also appears to allege that Chase Bank continued to collect from the deceased's family "unlawfully after wrongful death" and "assassinated my deceased mother's good name." (Compl.2).

Plaintiff appears to allege that Commercial Mutual Insurance received premiums from Chase and did not compensate the estate of Della Gause for a home invasion that took place in 2004, in which "three babies were tied up and duck taped ..." (Compl.2). Plaintiff seeks, among other things, injunctive relief, disclosure of closing contracts, police reports, and sums ranging in the amounts of $250,000 to $1,000,000.00 for wrongful foreclosure, slander, and damages for his children's suffering during the 2004 home invasion. (Compl.3).

*DISCUSSION*

I. *Standard of Review*

Courts are obliged to construe the pleadings of a *pro se* plaintiff liberally. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008); *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," courts must grant leave to amend the complaint. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

II. *Subject Matter Jurisdiction*

Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject matter jurisdiction. *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700-01 (2d Cir.2000). Unlike lack of personal jurisdiction, lack of subject matter jurisdiction cannot be waived and may be raised at any time by a party or by the Court *sua sponte. Id.* If subject matter jurisdiction is lacking,

the action must be dismissed." *Id.* at 700-01; Fed.R.Civ.P. 12(h)(3).

**\*2** The basic statutory grants of subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 513, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). Section 1331 provides federal-question jurisdiction and Section 1332 provides jurisdiction based on diversity of citizenship. *Id.* Here, even construed liberally, Plaintiff fails to plead either federal subject matter or diversity jurisdiction. [1] Thus, Plaintiff's claim must be dismissed.

[1]    Plaintiff writes that "the jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1392." But § 1392 does not confer subject matter jurisdiction. Instead, it determines venue when subject matter jurisdiction is properly invoked.

A. *Federal Question Jurisdiction*

"A plaintiff properly invokes § 1331 jurisdiction when he pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh,* 546 U.S. at 513. A claim alleging federal-question jurisdiction "may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.' " *Id.* at 513 n. 10. Courts hold *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); however, *pro se* plaintiffs must establish subject matter jurisdiction. *See, e.g., Rene v. Citibank N.A.,* 32 F.Supp.2d 539, 541-42 (E.D.N.Y.1999) (dismissing *pro se* complaint for lack of subject matter jurisdiction).

Here, Plaintiff principally alleges wrongful foreclosure. But this is a state law cause of action, not a federal one. *See Harris v. Department of Housing Preservation and Development,* 08-CV-1886, 2008 WL 3200269 * 2 (E.D.N.Y. Aug. 5, 2008); *Dockery v. Cullen & Dykman,* 90 F.Supp.2d 233, 236 (E.D.N.Y. Mar. 30, 2000) (noting that federal courts lack jurisdiction over claims of foreclosure fraud). Liberally construed, Plaintiff's Complaint also alleges libel or slander against the Defendants for damaging Plaintiff's "deceased mother's good name." But, once again, neither libel nor slander confers federal subject matter jurisdiction. *See Chemiakin v. Yefimov,* 932 F.2d 124, 126 (2d Cir.1991). Finally, liberally construed, Plaintiff also alleges breach of contract. But this too is only a state law cause of action. *See*

*Santos v. State Farm Fire and Cas. Co.,* 902 F.2d 1092 (2d Cir.1990); *Gambino v. American Guarantee & Liability Ins. Co.,* 2009 WL 3158151 at n. 1 (D.Conn. Sept. 28, 2009) (only maintaining jurisdiction over breach of insurance contract claim due to diversity). Thus, Plaintiff's Complaint has not alleged federal question jurisdiction.

B. *Diversity Jurisdiction*

A plaintiff properly invokes § 1332 jurisdiction when he presents a claim between parties of completely diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. "[C]omplete diversity" means that "each plaintiff's citizenship must be different from the citizenship of each defendant." *Hallingby v. Hallingby,* 574 F.3d 51, 56 (2d Cir.2009). Here, according to the Complaint, the Plaintiff and two of the Defendants, Commercial Mutual Insurance Company and Lunt Agency, Inc., are citizens of New York. Thus, complete diversity is lacking and, consequently, so is diversity jurisdiction.

*CONCLUSION*

**\*3** Plaintiff's claims, as alleged and liberally construed, fail to provide this Court with subject matter jurisdiction. Accordingly, the Court dismisses Plaintiff's Complaint without prejudice. To the extent that Plaintiff has stated valid state law causes of action, Plaintiff can pursue these in state court. Alternatively, in an abundance of caution, and given Plaintiff's *pro se* status, Plaintiff may file an Amended Complaint within thirty (30) days that validly pleads either federal question or diversity jurisdiction.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is directed to mark this matter as CLOSED if Plaintiff does not file an Amended Complaint within thirty days of this Order.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 4984346

**Gause v. Chase Home Finance LLC, Not Reported in F.Supp.2d (2009)**

2009 WL 4984346

---

**End of Document**                                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 429970
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Reginald GOUSSE, Plaintiff,

v.

Anthony GIARDULLO, Defendant.

21-CV-489(KAM)(AYS)
|
Signed 02/08/2021

**Attorneys and Law Firms**

Reginald Gousse, Alden, NY, pro se.

## Memorandum and Order

KIYO A. MATSUMOTO, United States District Judge:

**\*1** The plaintiff, Reginald Gousse ("Plaintiff"), who is currently incarcerated at the Wende Correctional Facility in Erie County, New York, initiated this action *pro se* claiming libel, intentional infliction of emotional distress, and negligent infliction of emotional distress. (*See generally* ECF No. 1, Complaint ("Compl.").) Plaintiff purports to invoke this court's jurisdiction based on the diversity of the parties' citizenship, pursuant to 28 U.S.C. § 1332. (*Id.* at 2.)

Plaintiff's request to proceed *in forma pauperis* is GRANTED. For the reasons that follow, the court DISMISSES Plaintiff's complaint for lack of subject matter jurisdiction, but grants Plaintiff leave to file an amended complaint within thirty (30) days of the date of this Memorandum and Order.

## Background

In 2006, Plaintiff was convicted by a jury in New York State court of murder in the first degree, attempted robbery in the first degree, and criminal impersonation in the first degree. *See People v. Gousse*, 841 N.Y.S.2d 383, 384 (2d Dep't 2007). The crime of conviction was the murder of a man who was shot and killed on the night of January 5, 2005 in Franklin Square, Nassau County, New York. (Compl. at 2.) The defendant in this civil case, Anthony Giardullo ("Defendant"), testified as an eyewitness

at Plaintiff's criminal trial, and identified Plaintiff as the shooter. (*Id.* at 3.) Following Plaintiff's trial and conviction, Plaintiff was sentenced to life imprisonment without the possibility of parole. (*Id.* at 4.)

Plaintiff alleges that on May 20, 2020, Defendant published a false statement on Defendant's Twitter account. (*Id.* at 4.) The Twitter post, which Plaintiff attached as an exhibit to the complaint, recounted Defendant's testimony against "a man" who shot a victim while impersonating a police officer. (*Id.*, Ex. G.) Specifically, Plaintiff alleges that Defendant's statements that Plaintiff was a "killer" and a "police impersonator" are false. (*Id.* at 5.) Plaintiff seeks compensatory damages in the amount of $1.5 million, plus punitive damages in the amount of $1 million, for libel and the infliction of emotional distress. (*Id.* at 8.)

## Legal Standard

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, the court need not accept "legal conclusions." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Nonetheless, a district court shall dismiss an action brought *in forma pauperis* "at any time" if the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

## Discussion

**\*2** Federal courts are courts of limited jurisdiction, and may not preside over cases if subject matter jurisdiction is lacking. *See Lyndonville Sav. Bank & Trust Co. v. Lussier*,

2021 WL 429970

211 F.3d 697, 700-01 (2d Cir. 2000). Unlike lack of personal jurisdiction, lack of subject matter jurisdiction cannot be waived, and it may be raised at any time by a party, or by the court *sua sponte. Id.* "If subject matter jurisdiction is lacking, the action must be dismissed." *Id.*; *see also* Fed. R. Civ. P. 12(h)(3). The party asserting jurisdiction bears the burden of proof. *DiTolla v. Doral Dental IPA of N.Y.*, 469 F.3d 271, 275 (2d Cir. 2006).

Plaintiff's claims for libel and infliction of emotional distress are based entirely on state tort law. Because such claims do not arise under a federal law, a federal treaty, or the Constitution of the United States, federal question subject matter jurisdiction cannot be invoked. *See* 28 U.S.C. § 1331. Thus, this court will only have subject matter jurisdiction over Plaintiff's claims if there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; *see also Bayerische Landesbank, N. Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012).

Here, the diversity of citizenship requirement appears to be satisfied. Plaintiff alleges that he is a citizen of Haiti, and although he is currently incarcerated in Nassau County, New York, he is a non-permanent resident of the United States. (Compl. at 2.) Defendant is allegedly a citizen of New York. (*Id.*) An individual's citizenship is generally determined by a person's domicile. *See Tagger v. Strauss Group Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020). However, immigrants present in the United States on a non-permanent basis are considered citizens of their home country for purposes of diversity jurisdiction. *See Kato v. Cty. of Westchester*, 927 F. Supp. 714, 715–16 (S.D.N.Y. 1996). Thus, the court accepts Plaintiff's allegation that he is a non-permanent resident of the United States, and for purposes of diversity jurisdiction, he is deemed a citizen of Haiti. The law provides for diversity jurisdiction over actions between "citizens of a State and citizens or subjects of a foreign state[.]" 28 U.S.C. § 1332(a)(2). Thus, because Plaintiff is a citizen of Haiti and Defendant is a citizen of New York, complete diversity is present.

However, Plaintiff fails to satisfy the amount-in-controversy requirement. "[A] plaintiff invoking federal jurisdiction must demonstrate a 'reasonable probability' that the amount-in-controversy requirement is satisfied[.]" *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)). Although courts recognize a "presumption that the face of the complaint is a good

faith representation of the actual amount in controversy," that presumption is rebutted where there is "legal certainty that [the plaintiff] could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). Here, Plaintiff purports to seek over one million dollars in compensatory damages. However, it is a "legal certainty" based on the facts alleged that Plaintiff could not recover the claimed damages, and thus cannot establish federal jurisdiction. Under New York law, damages for libel can include both "out-of-pocket loss" and "impairment of reputation and standing in the community, personal humiliation and mental anguish and suffering." *Van-Go Transp. Co. v. New York City Bd. of Educ.*, 971 F. Supp. 90, 100 (E.D.N.Y. 1997) (quoting *Wachs v. Winter*, 569 F. Supp. 1438, 1446 (E.D.N.Y. 1983)). Plaintiff, however, has not alleged any facts showing out-of-pocket loss, damage to his reputation, nor any manifestations of his alleged mental anguish. Thus, even accepting all facts alleged as true, Plaintiff's damages would be less than $75,000. *See Trisvan v. Burger King Corp.*, No. 19-cv-6396 (MKB), 2020 WL 1975236, at *2 (E.D.N.Y. Apr. 24, 2020) ("The amount in controversy must be non-speculative in order to satisfy the statute and conclusory allegations that the amount-in-controversy requirement is satisfied are insufficient.").

**\*3** Moreover, even if Plaintiff could invoke the court's subject matter jurisdiction, his claim for libel, as currently alleged in his complaint, would fail to state a claim for relief. "Under New York law, a plaintiff must establish five elements to recover in libel: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or *per se* actionability (defamatory on its face)." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000).

Plaintiff alleges that Defendant published a statement on Twitter asserting that "a man" was a "killer" and a "police impersonator." First, the statement at issue did not include Plaintiff's name; it only referred to "a man" who shot and killed a victim. (Compl., Ex. G.) Second, Plaintiff has not sufficiently alleged that the statement at issue was false. Plaintiff was convicted in state court of murder and criminal impersonation, he exhausted his state court appeals, and his petition for a writ of *habeas corpus* was recently denied by

**Gousse v. Giardullo, Slip Copy (2021)**

2021 WL 429970

the Honorable Joanna Seybert in this District. *See Gousse v. Superintendent*, No. 19-cv-1607 (JS), 2020 WL 4369643, at \*24 (E.D.N.Y. July 29, 2020). Given that Plaintiff was convicted of the crimes Defendant allegedly accused Plaintiff of committing, Plaintiff has failed to allege any facts to suggest that the statements made by Defendant were false, or even "not substantially true." *Tannerite Sports, LLC v. NBC Universal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).

## Conclusion

For the foregoing reasons, Plaintiff's complaint is DISMISSED for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, and for failure to state a claim. However, in light of Plaintiff's *pro se* status, the court grants Plaintiff leave to amend the complaint to allege facts, if possible, to support subject matter jurisdiction, and to state a claim against Defendant. The court grants Plaintiff thirty (30) days from the date of this Memorandum and Order to file an amended complaint. If Plaintiff fails to amend his complaint within thirty days, judgment will be entered against him. No summons shall issue at this time, and all further proceedings shall be stayed for thirty days.

The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

**All Citations**

Slip Copy, 2021 WL 429970

---

**End of Document**    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:22-cv-01246-TJM-TWD    Document 7    Filed 12/19/22    Page 24 of 44

Trisvan v. Burger King Corporation, Not Reported in Fed. Supp. (2020)

2020 WL 1975236

2020 WL 1975236
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, E.D. New York.

John TRISVAN, Plaintiff,
v.
BURGER KING CORPORATION, Restaurant Brands
International, and Tim Hortons Incorporated, Defendants.

19-CV-6396 (MKB)
|
Signed 04/24/2020

**Attorneys and Law Firms**

John Trisvan, Brooklyn, NY, pro se.

## MEMORANDUM & ORDER

[MARGO K. BRODIE], United States District Judge:

 **\*1**  Plaintiff John Trisvan, proceeding *pro se*, commenced
the above-captioned action on November 6, 2019 against
Defendant Burger King Corporation ("Burger King"),
alleging that he suffered food poisoning after eating at a
Burger King restaurant in Brooklyn, New York, and seeking
relief pursuant to the Federal Trade Commission Act of
1914, [15 U.S.C. §§ 45] and [52] (the "FTCA"), and Article
2 of the Uniform Commercial Code.[1] (Compl., Docket
Entry No. 1.)[2] By Memorandum and Order dated March 2,
2020, the Court granted Plaintiff's application to proceed *in
forma pauperis* pursuant to [28 U.S.C. § 1915(a)], dismissed
the Complaint pursuant to [28 U.S.C. § 1915(e)(2)(B)], and
allowed Plaintiff to amend within thirty days. (Mem. & Order
dated Mar. 2, 2020, Docket Entry No. 5.) On April 1, 2020,
Plaintiff filed an Amended Complaint, adding Restaurant
Brands International ("Restaurant Brands") and Tim Hortons
Incorporated ("Tim Hortons") as Defendants and seeking
relief for the violation of state law pursuant to the Court's
diversity jurisdiction. (Am. Compl., Docket Entry No. 7.)
For the reasons set forth below, the Court dismisses the
Amended Complaint without prejudice for lack of subject
matter jurisdiction.

1      Plaintiff filed a similar action on September 10,
       2016, against Checkers Drive-In Restaurant. *See*

*Trisvan v. Checkers Drive-In Rest., Inc.*, No. 16-
CV-7000, 2019 WL 332177 (E.D.N.Y. Jan. 25,
2019) (dismissing complaint for failure to state a
claim).

2      Because the Complaint and subsequent Amended
       Complaint are not consecutively paginated, the
       Court refers to the page numbers assigned by the
       Electronic Case Filing ("ECF") system.

### I. Background

The Court assumes the truth of the factual allegations in the
Amended Complaint for purposes of this Memorandum and
Order.

Plaintiff alleges that Tim Hortons, Restaurant Brands, and
Burger King merged in 2014. (*Id.* at 5.) On November 6,
2016, Plaintiff purchased food from a Burger King restaurant
located at 1297 Fulton Street in Brooklyn, New York and
subsequently "began having abdominal pains" after eating
"the meal at his residence." (*Id.* at 2.) Plaintiff sought
medical treatment at Woodhull Medical Center, where he was
diagnosed with "[gastroenteritis][,] [colitis] and [cystitis]." (*Id.*
at 3.) Plaintiff filed a complaint with Burger King "within
48 hours of this incident," but received no response. (*Id.*)
Plaintiff later discovered that the same Burger King had been
"penalized" in 2014 and 2015 for failing to maintain food
at proper temperatures, had been fined twice for sanitary
violations in 2016, and had been fined for sanitary violations
in 2017 and 2019. (*Id.* at 4.)

Plaintiff alleges that Defendants engaged in "deceptive and
unfair acts," "failed to conform to safety regulations and
provisions," and sold goods that were "not suitable for sale,"
in violation of the Uniform Commercial Code. (*Id.* at 5.)
Plaintiff seeks $2 million in "punitive and compensatory
relief." (*Id.* at 6.)

### II. Discussion

#### a. Standard of review

A complaint must plead "enough facts to state a claim to relief
that is plausible on its face." *[Bell Atl. Corp. v. Twombly]*, 550
U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A
claim is plausible "when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged." *[Matson
v. Bd. of Educ.]*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting

Case 1:22-cv-01246-TJM-TWD    Document 7    Filed 12/19/22    Page 25 of 44

Trisvan v. Burger King Corporation, Not Reported in Fed. Supp. (2020)

2020 WL 1975236

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. In reviewing a *pro se* complaint, a court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that after Twombly, the court "remain[s] obligated to construe a pro se complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

**\*2** In addition, if the Court "determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it...." (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000))).

### b. The Court lacks subject matter jurisdiction

Plaintiff invokes the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Am. Compl. 2.)

Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction over the issues presented. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). Under the diversity jurisdiction statute, federal courts have subject matter jurisdiction over state-law claims where the plaintiff and defendant are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' *i.e.* all plaintiffs must be citizens of states diverse

from those of all defendants."). For a federal court to exercise subject matter jurisdiction based on diversity, there must be complete diversity of citizenship between all plaintiffs and all defendants. *See, e.g., Bartlett v. Honeywell Int'l Inc.*, 737 F. App'x 543, 547 (2d Cir. 2018) ("Diversity jurisdiction is present when there is complete diversity between the parties...." (citing 28 U.S.C. § 1332(a))); *Pa. Pub. Sch. Emps.' Ret. Sys.*, 772 F.3d at 117–18. In addition, "[f]ederal diversity jurisdiction requires an amount in controversy of at least $75,000 ... [and] this amount is measured as of the time that a complaint is filed ... and it is established by the face of the complaint and the dollar amount actually claimed." *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 154–55 (D. Conn. 2016) (first citing *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961); and then citing *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003)) (internal citations omitted); *see also Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. ——, ——, 139 S. Ct. 1743, 1746, 204 L.Ed.2d 34 (2019) ("In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: cases that 'aris[e] under' federal law, § 1331, and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties, § 1332(a)."); *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005) (noting that "[g]enerally, for purposes of diversity jurisdiction, the amount in controversy is established as of the date of the complaint and is not reevaluated based on post-filing events"). "Generally, the plaintiff, as the party asserting subject matter jurisdiction, has the burden of proving that it exists by a preponderance of the evidence." *Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 443 (2d Cir. 2019) (citing *Makarova*, 201 F.3d 110 at 113); *Makarova*, 201 F.3d at 113 ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."); *see also Scherer*, 347 F.3d at 397 ("A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994))); *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 93 F.3d 1064, 1070 (2d Cir. 1996) (same). The amount in controversy must be non-speculative in order to satisfy the statute and conclusory allegations that the amount-in-controversy requirement is satisfied are insufficient. *See Valente v. Garrison From Harrison LLC*, No. 15-CV-6522, 2016 WL 126375, at *2 (E.D.N.Y. Jan. 11, 2016) ("[B]oilerplate pleadings do not suffice to establish that

Case 1:22-cv-01246-TJM-TWD    Document 7    Filed 12/19/22    Page 26 of 44
Trisvan v. Burger King Corporation, Not Reported in Fed. Supp. (2020)
2020 WL 1975236

[an] action involves an amount in controversy adequate to support federal diversity jurisdiction.").

**\*3** In addition, where the jurisdictional amount includes punitive damages, those punitive damages will be considered with heightened scrutiny. *See Nwanza v. Time, Inc.*, 125 F. App'x 346, 349–50 (2d Cir. 2005) (finding the plaintiff's "demand for five million dollars' punitive damages based on his claims that [the defendant] fraudulently induced him into subscribing to magazines with promises of multi-million dollar prizes — with unspecified or no actual damages" insufficient to meet amount-in-controversy requirement); *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 (2d Cir. 1972) ("[I]n computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages."); *see also Cohen v. Narragansett Bay Ins. Co.*, No. 14-CV-3623, 2014 WL 4701167, at \*3 n.4 (E.D.N.Y. Sept. 23, 2014) ("[T]he Court is not obligated to accept, on face value, a claimed amount of punitive damages, particularly where there would be no diversity without such damages.").

Plaintiff alleges that he is a citizen of New York, that Burger King has a principal place of business in Florida, and that Restaurant Brands and Tim Hortons have their principal places of business in Canada. (Am. Compl. 1–2.) Although Plaintiff alleges that the parties are diverse, Plaintiff fails to meet his burden in showing that the amount in controversy meets the statutory threshold. Plaintiff states that the amount in controversy includes:

> the cost of the meal in question; the cost of one's injury and such trip to the hospital Emergency Room ... hospital bills brought to Plaintiff and his insurance company; bills of prescription and pharmaceutical drugs cost to Plaintiff and his insurance company; compensatory as well as punitive damages, ... which Plaintiff is seeking to recover exceeds well above $75,000.01.

(*Id.*) Plaintiff does not, however, provide any actual amounts for these expenses and damages in support of the conclusory allegation that they total more than $75,000.00. *See Watty v. Cuomo*, No. 12-CV-2660, 2013 WL 4495184, at \*2 (E.D.N.Y.

Aug. 14, 2013) ("Plaintiff's demand for punitive and other additional damages, unsupported by the law or the allegations in the amended complaint, is not sufficient to satisfy the amount-in-controversy requirement."). In addition, Plaintiff fails to provide a basis for seeking $2 million in punitive and compensatory damages for his alleged food poisoning. Because Plaintiff fails to allege any facts supporting his claim for compensatory damages and has not provided any basis for his request for $2 million in punitive damages, Plaintiff's request for relief is speculative and insufficient to meet the amount-in-controversy requirement for the Court to exercise diversity jurisdiction over this matter. *See Centra Developers Ltd. v. Jewish Press Inc.*, No. 16-CV-6737, 2018 WL 1788148, at \*5 (E.D.N.Y. Feb. 20, 2018) (finding the district court lacked subject matter jurisdiction despite the plaintiff's allegations of "$3,000,000 in punitive damages" because the "[p]laintiff's complaint fail[ed] to allege any other out-of-pocket expenses it has incurred, except attorney's fees"), *report and recommendation adopted*, No. 16-CV-6737, 2018 WL 1445574 (E.D.N.Y. Mar. 23, 2018); *Duncan v. Crawford*, No. 16 CV 4699, 2016 WL 4919891, at \*2 (E.D.N.Y. Sept. 14, 2016) (remanding removed action to state court where neither the complaint nor notice of removal contained information "specifying the exact nature and extent of [p]laintiffs' injuries, or the treatment they have received, that would permit this [c]ourt to draw a reasonable inference that the amount in controversy requirement has been satisfied").

Accordingly, the action is dismissed, without prejudice, for lack of subject matter jurisdiction.

### c. Leave to amend

**\*4** In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file a second amended complaint within thirty (30) days of the entry of this Memorandum and Order. Plaintiff is advised that the second amended complaint will completely replace the Amended Complaint, must be captioned "Second Amended Complaint," and shall bear the same docket number as this Memorandum and Order. If Plaintiff intends to invoke the Court's diversity jurisdiction over his state law claim, Plaintiff must clearly state the basis for doing so. If Plaintiff fails to file a second amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment dismissing the case for the reasons stated above.

2020 WL 1975236

### III. Conclusion

Accordingly, the Court dismisses the Complaint for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1915(e)(2)(b); Fed. R. Civ. P. 12(h)(3). The Court grants Plaintiff leave to file a second amended complaint within thirty (30) days from the entry of this Memorandum and Order. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See*

*Coppedge v. United States*, 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of Court is directed to mail a copy of this Memorandum and Order to Plaintiff.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 1975236

## Footnotes

**End of Document**                                              © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:22-cv-01246-TJM-TWD    Document 7    Filed 12/19/22    Page 28 of 44

Nickerson v. Communication Workers of America Local 1171, Not Reported in...

2005 WL 1331122

2005 WL 1331122
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Rose Mary NICKERSON, Plaintiff,

v.

COMMUNICATION WORKERS OF AMERICA
LOCAL 1171 and John S. Hanson, in his capacity
as Union President, and Individually, Defendants.

No. 504CV00875NPM.
|
May 31, 2005.

**Attorneys and Law Firms**

O'Hara & O'Connell, Syracuse, New York, for Plaintiff,
Stephen Ciotoli, of counsel.

Creighton, Pearce, Johnsen & Giroux, Buffalo, New York, for
Defendants, Jonathan Johnsen, of counsel.

*MEMORANDUM-DECISION and ORDER*

MCCURN, Senior J.

I. Procedural Background
 **\*1** Plaintiff, Rose Mary Nickerson ("Nickerson") originally
filed this action in New York State Supreme Court for the
County of Onondaga seeking monetary damages relating
to lost vacation pay allegedly due her from defendants,
Communication Workers of America Local 1171 ("the
Union") and John S. Hanson, in his capacity as president
of the Union and individually ("Hanson") (collectively,
"Defendants"). In her initial complaint, Nickerson alleged
the following three state law causes of action against the
Defendants: violations of the New York Labor Law, common
law breach of contract, and "wrongful denial and withholding
of employment benefits[.]" Compl. ¶¶ 34-55, Dkt. No. 1. On
July 23, 2004, Defendants removed the action to this court on
the ground that the Railway Labor Act, 45 U.S.C. § 184, gives
federal courts exclusive jurisdiction of claims for the breach
of a collective bargaining agreement in the airline industry.
*See* Notice of Removal ¶ 7, Dkt. No. 1.

Three days after removal, Defendants filed a motion to
dismiss for failure to state a claim upon which relief may

be granted pursuant to Fed.R.Civ.P. 12(b)(6). On August 11,
2004, Nickerson filed a motion to remove the action to State
court pursuant to 28 U.S.C. § 1447(c). Oral argument was
heard regarding those motions, after which the court allowed
Nickerson to amend her complaint. The Amended Complaint
alleges the following six causes of action: Count I is a claim
for violations of New York Labor Law § 190 et seq., Count
II is a claim for common law breach of contract, Count III is
a claim for "wrongful denial and withholding of employment
benefits-retaliation against Plaintiff," Count IV is a claim
for defamation and libel, Count V is a claim for abuse of
process, and Count VI is a claim for violation of the Labor
Management Reporting and Disclosure Act ("LMRDA").
After Nickerson filed the Amended Complaint, the parties
agreed to and did withdraw their respective motions regarding
the initial complaint, with the understanding that Defendants'
motion to dismiss claims in the Amended Complaint was
forthcoming. Presently before the court is said motion,
wherein Defendants seek dismissal of all claims except for
Count II of the Amended Complaint for failure to state a claim
upon which relief may be granted pursuant to Fed.R.Civ.P.
12(b)(6). It should be noted that, at the conclusion of oral
argument regarding the present motion, both parties conceded
that even if the court grants same, it nonetheless retains
jurisdiction over the remaining state law breach of contract
claim in Count II of the Amended Complaint, as resolution
of same requires interpretation of a collective bargaining
agreement, and thus is preempted by the Railway Labor Act.
*See* 45 U.S.C. § 184 (2004); *Hawaiian Airlines, Inc. v. Norris,*
*512 U.S. 246, 114 S.Ct. 2239 (1994).*

II. Factual Background
The following facts are set forth by Nickerson in the Amended
Complaint as well as the exhibits thereto, and must be
accepted as true by the court for purposes of deciding the
present motion.

 **\*2** Nickerson began work for U.S. Airways, Inc. ("US Air")
in June 1969 at the Reservation Center in MONY Plaza,
Syracuse, and thereafter continued her employment with U.S.
Air at the Airport Boulevard location in North Syracuse. At
all relevant times, Nickerson remained an employee of U.S.
Air and a member of the Union. In or about 1998, the Union
was formed and Nickerson became a member. The Union, as
the exclusive representative of U.S. Air employees, engaged
in contract negotiations with U.S. Air for the development
and creation of a collective bargaining agreement ("CBA")
between U.S. Air and its Passenger Service employees, of
which Nickerson was, a member.

Case 1:22-cv-01246-TJM-TWD   Document 7   Filed 12/19/22   Page 29 of 44

Nickerson v. Communication Workers of America Local 1171, Not Reported in...

2005 WL 1331122

In May 2000 Nickerson became the Union president, and pursuant to Article 17 of the CBA, took a leave of absence from her direct employment with U.S. Air. Nonetheless, during her tenure as Union president, Nickerson remained a U.S. Air employee, subject to the terms of the CBA and the Union Bylaws. Also while serving as Union president, U.S. Air continued Nickerson's seniority, employee benefits and travel privileges in accordance with the CBA and Union Bylaws. In addition, Nickerson was entitled to return to her job at U.S. Air upon discontinuance of her service with the Union.

In December 2002, Nickerson's tenure as Union president ended. At that time, she sought to return to her position at the Reservation Center in North Syracuse. However, because U.S. Air was closing that facility, it furloughed all of its employees at that location, including Nickerson. According to a letter Nickerson received from U.S. Air, which was dated February 3, 2003, her furlough became effective January 17, 2003.

Nickerson thereafter sought compensation from the Union for payment of her unused vacation days. According to Article X Section 1 of the Union Bylaws, the local Union president shall suffer no loss of pay or benefits. Ostensibly due to this provision in the Bylaws, Nickerson claims she is owed 27 days (216 hours) of vacation time. However, Nickerson's requests that the Union compensate her for this time were refused. On March 12, 2003 Nickerson issued a letter to the new Union president, Defendant Hanson, and thereafter placed two telephone calls to him for the purpose of requesting payment for her unused vacation days. On March 28, 2003, Hanson responded to Nickerson's request by letter, indicating that the "national union" was going to conduct an audit of her unused vacation time. Another letter demanding payment was issued to Hanson by Nickerson on December 30, 2003, which was thereafter forwarded by Hanson to counsel for the "National union". After an initial investigation, counsel for the "National union" directed the matter back to Hanson in March 2004. However, since that time, despite letters and telephone calls to Hanson by her attorneys, Nickerson has not received any communication from Hanson. Moreover, there is no internal dispute mechanism available for Nickerson to seek resolution of her claims for compensation of her unused vacation days.

**\*3** In December 2002, a union trial was held in which Nickerson was the named respondent to four charges by complainant, Kathleen Striffler ("Striffler"). Said charges were as follows: (1) failure to schedule regular executive council meetings, (2) adjustment of a member's time cards without his knowledge, (3) misappropriation of money or property belonging to the union local and failure to provide receipts for purchases made on behalf of the union local, and (4) offenses which tend to bring the union local into disrepute. The trial was held before a five-member panel, including the Chairperson of the panel. Each party to the dispute was represented by counsel and witnesses were sworn and testified. Nickerson was found "not guilty" and was exonerated on all charges.

According to Nickerson, the aforementioned union trial and subsequent refusal by the Union to compensate her for unused vacation time are retaliatory actions taken against her by Striffler and the Union due to Nickerson's refusal to misrepresent facts to the New York State Department of Labor ("DOL") and the Unemployment Insurance Appeal Board ("UIB") so that Striffler, a former Union employee, could receive unemployment benefits.

### III. Discussion

#### A. Rule 12(b)(6) Standard

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 216 (2d Cir.2004), *quoting Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). When reviewing a 12(b)(6) motion, this court must accept the allegations of fact in plaintiff's complaint as true, drawing all reasonable inferences in his favor. *See Freedom Holdings,* 357 F.3d at 216, *citing Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994). The court will consider, in addition to allegations of fact set forth in the complaint, any exhibits attached thereto or documents it incorporates by reference, *see Blue Tree Hotels, Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F .3d 212, 217 (2d Cir.2004), or "documents that the plaintiff[ ] either possessed or knew about and upon which [he] relied in bringing the suit," *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000).

#### B. Count I–New York Labor Law § 190 et seq.

Count I of the Amended Complaint sets forth allegations in support of a cause of action against Defendants for violation of Article 6 of the New York Labor Law, specifically, section

Case 1:22-cv-01246-TJM-TWD    Document 7    Filed 12/19/22    Page 30 of 44

Nickerson v. Communication Workers of America Local 1171, Not Reported in...

2005 WL 1331122

198-c. *See* Am. Compl. ¶¶ 33-43. *See also* N.Y. Lab. Law § 198-c (McKinney 2004). Nickerson alleges that Defendants willfully failed to compensate her for unused vacation pay in accordance with the terms of the 1999 CBA and the Union Bylaws, in violation of section 198-c. *See* Am. Compl. ¶¶ 37-40.

New York Labor Law § 198-c provides that, among other things, (1) an employer who fails to pay benefits to employees in accordance with an agreement to that effect is guilty of a misdemeanor, (2) "benefits" include vacation pay, and (3) executives earning in excess of $600 per week are not persons covered by the section. *See* § 198-c. Defendants argue that this claim should be dismissed because § 198-c does not provide for a civil cause of action, and because Nickerson is not protected by the statute as she was an executive earning in excess of $600 per week.

 **\*4** Defendants are correct in their argument that an executive earning more than $600 per week falls within a limitation to the protections of § 198-c. *See* N.Y. Lab. Law § 198-c. *See also* Edwards v. Schrader-Bridgeport International, Inc., 205 F.Supp.2d 3, 15 (N.D.N.Y.2002). Nickerson, in weak opposition, cites caselaw which holds that the limitation does not apply in claims brought under some sections of Article 6, to wit §§ 193 and 194, *see* Maggione v. Bero Construction Corp., 106 Misc.2d 384, 386, 431 N.Y.S.2d 943 (Sup.Ct.1980), and therefore, she argues, because the limitation does not apply to all of Article 6, it does not apply to § 198-c. Nonetheless, Defendants fail to identify any allegation in the Amended Complaint, or an exhibit thereto, that Nickerson earned in excess of $600 per week. To be sure, Defendant Hanson has submitted an affidavit wherein he alleges that, in accordance with the CBA, which is incorporated by reference into the Complaint, Nickerson received $24 per hour for a forty hour work week while employed as Union president. *See* Aff. of John Hanson, July 26, 2004 at ¶ 4, Dkt. No. 21. However, the language of the CBA is devoid of any reference to Nickerson's salary amount.

In any event, Defendants argue as an alternative basis for dismissal, that § 198-c does not provide for a civil cause of action. Initially, the court notes Nickerson's complete lack of opposition to this alleged ground for dismissal. Although a plaintiff's failure to oppose an argument in favor of dismissal does not result in a finding of default on a Rule 12(b)(6) motion, *see* Sherlock v. Wal-Mart Store # 2156, No. 04-CV-1180, 2005 WL 1027532, at \*1 (E.D.N.Y. May 2, 2005), bald conclusions of law, without supporting legal authority,

do not satisfy even the liberal notice pleading standard of Rule 8, and will not survive a motion to dismiss, *see* Vossler v. Phasecom America, Inc., No. 04-CV-128S, 2004 WL 1628903, at \*1 (W.D.N.Y. July 19, 2004). In their moving papers, Defendants provide legal authority in support of their contention that § 198-c does not allow a civil remedy for its violation. *See* Hammell v. Banque Paribas, 780 F.Supp. 196, 200 (S.D.N.Y.1991), *citing* Stoganovic v. Dinolfo, 92 A.D.2d 729, 461 N.Y .S.2d 121, 123 (App.Div.1983), aff'd, 61 N.Y.2d 812, 473 N.Y.S.2d 972 (1984). The court in *Hammell* dismissed the plaintiff's § 198-c claim, relying on a New York Court of Appeals order affirming the rule of law that said statute does not allow a civil cause of action. *See id.* Therefore, Nickerson's claim in Count I of the Amended Complaint, for a violation New York Labor Law § 198-c must be dismissed for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

C. Tort Liability-Counts III, IV and V
Defendants argue that the tort claims against the Union and against Hanson in his capacity as Union president, which are set forth in Counts III,[1] IV, and V of the Amended Complaint, should be dismissed. It is the law in New York that a voluntary, unincorporated membership association, such as the Union here, cannot be sued for the torts of its members unless a plaintiff alleges and proves the liability of every single member of said association. *See* Martin v. Curran, 303 N.Y. 276, 280-282 (N.Y.1951). *See also* N.Y. Gen. Ass'ns Law § 13 (McKinney 2004). Although, as Nickerson points out, this law is criticized, Defendants correctly note that it is nonetheless valid law in New York and as such, continues to be followed. *See* Roth v. United Federation of Teachers, 5 Misc.3d 888, 895-896, 787 N.Y.S.2d 603 (Sup.Ct.2004); Bldg. Indus. Fund v. Local Union No. 3, IBEW, 992 F.Supp. 192, 194 (E.D.N.Y.1996).

---

[1]    In Count III of the Amended Complaint, Nickerson purports to set forth a tort claim for "wrongful denial and withholding of employment benefits-retaliation against plaintiff" wherein she alleges that the Defendants have failed to compensate her for her unused vacation pay in retaliation for, among other things, Nickerson's refusal to misrepresent facts to the DOL and UIB on behalf of Striffler. *See* Am. Compl. ¶¶ 51-59. However, as will be addressed hereinafter, Nickerson's actual claim under Count III is that Defendants breached the covenant of good faith and fair dealing. To the

extent she can state a claim for punitive damages for an underlying tort related to said breach, Count III may also be interpreted as a tort claim.

**\*5** Defendants also seek dismissal of Counts III, IV and V of the Amended Complaint as against Hanson in his individual capacity, because, they allege, Nickerson has failed to plead facts which would support claim that Hanson acted outside of his role as Union president. Although Defendants fail to cite any authority in support of their argument, it is the law in New York that a union official, such as Hanson, can be held personally liable for torts committed in his or her individual capacity, but not for the torts of the union or its members simply by virtue of being an officer of said union. *See, e.g., A. Terzi Prod., Inc. v. Theatrical Protective Union,* 2 F.Supp.2d 485, 495 (S.D.N.Y.1998).

However, because alternative grounds exist for dismissal of Counts III, IV and V of the Amended Complaint, the court need not address either of the aforementioned arguments.

1. Count III-Wrongful Denial and Withholding of Employment Benefits-Retaliation Against Plaintiff
Nickerson's third cause of action is entitled "wrongful denial and withholding of employment benefits-retaliation against plaintiff." As set forth in the Amended Complaint,

> "[d]espite numerous communications between the parties regarding the payment of such benefits, defendants have failed to pay the sum due and owing to plaintiff for her unpaid vacation pay. Plaintiff alleges that Defendants, and each of them, have wrongfully failed and refused to pay Plaintiff's vacation pay for some ulterior motive, and in retaliation against plaintiff, arising from her tenure as the Local President and that the withholding of plaintiff's vacation pay is being done based on some wrongful, malicious reason, which gives rise to other and further damages, including punitive damages."

Arn. Compl. ¶ 54. Nickerson further alleges that the motive behind Defendants' failure to pay her vacation benefits is retaliation for her refusal to misrepresent facts to the DOL

and UIB on behalf of former Union employee, Striffler. *See* Am. Compl. ¶ 58. Nickerson also alleges facts surrounding the Union "trial" against her involving Striffler, ostensibly for further support of her claim of retaliation. *See* Am. Compl. ¶¶ 55-57.

Although Nickerson qualifies this cause of action as one in tort, in her opposition papers, she clarifies that her claim here is for a breach of the covenant of good faith and fair dealing. However, Nickerson argues that she is still due punitive damages on this claim because, as in insurance law, where there is no dispute as to coverage, and where defendants have acted in bad faith with "an extraordinary showing of a 'disingenuous or dishonest failure to carry out a contract[ ]' " punitive damages may be awarded. *See* Pl's Mem of Law in Opp'n, *citing Gordon v. Nationwide Mutual Insurance Co.,* 30 N.Y.2d 427, 438, 334 N.Y.S.2d 601 (1972); *Monroe v. Providence Washington Insurance Co.,* 126 A.D.2d 929, 930, 511 N.Y.S.2d 449 (App.Div.1987).

**\*6** Defendants note that a covenant of good faith and fair dealing does not impose any obligation beyond the contract, *see* Defs.' Reply Mem. of Law, *citing Silvester v. Time Warner, Inc.,* 1 Misc. .3d 250, 763 N.Y.S.2d 912 (Sup.Ct.2003), and punitive damages on such a claim are only payable when a separate tort is committed which requires allegations that a party engaged in separate conduct outside the contract intending to defeat same, *see id., citing Logan v. Empire Blue Cross and Blue Shield,* 275 A.D.2d 187, 194, 714 N.Y.S.2d 119 (App.Div.2000); *New York University v. Continental Ins. Co.,* 87 N.Y.2d 308, 316, 639 N.Y.S.2d 288 (1995).

It is true that every contract contains an implied covenant of good faith and fair dealing. *See Silvester,* 1 Misc.3d at 258. However, it is also true that "the use of familiar tort language to support a claim for breach of the implied covenant of good faith and fair dealing does not change the cause of action to a tort claim in the absence of an underlying tort duty sufficient to support a claim for punitive damages." *Drepaul v. Allstate Ins. Co.,* 299 A.D.2d 391, 749 N.Y.S.2d 439, 441 (App.Div.2002). While Nickerson may contend that this cause of action is based in contract, not tort law, because she is demanding punitive damages, she must allege facts sufficient to establish an underlying tort claim. Because, as will be discussed shortly, Nickerson cannot state a claim for either defamation or abuse of process, the only torts alleged in the Amended Complaint, her claim for punitive damages under a breach of the covenant of good faith and fair dealing

Case 1:22-cv-01246-TJM-TWD    Document 7    Filed 12/19/22    Page 32 of 44

Nickerson v. Communication Workers of America Local 1171, Not Reported in...

2005 WL 1331122

theory, must also fail. As such, Defendants' motion to dismiss Count III of the Amended Complaint is likewise granted.

## 2. Count IV-Defamation and Libel

Defendants seek dismissal of Nickerson's claim for defamation and libel, set forth in Count IV of the Amended Complaint, on the grounds that it is not timely in accordance with the statute of limitations set forth in N.Y. C.P.L.R. § 215(3), and alternatively, because it fails to plead a claim for defamation in accordance with C.P.L.R. § 3016(a).

Initially, it should be noted that while this court must apply New York's statute of limitations to Nickerson's defamation claim, such is not the case for the pleading requirements set forth in C.P.L.R. § 3016(a). "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Com/Tech Communication Techs., Inc. v. Wireless Data Sys., Inc.,* 163 F.3d 149, 150 (2d Cir.1998), *quoting Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). *See also Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817 (1938). The principles of *Erie* and its progeny apply equally whether the court is exercising diversity or pendent jurisdiction. *See Gravatt v. City of New York,* 54 F.Supp.2d 233, 233-234 (S.D.N.Y.1999). Therefore, while this court must apply the substantive law of New York to Nickerson's defamation claim, including the relevant statute of limitations set forth in C.P.L.R. § 215(3), *see Investigative Group, Inc. v. Brooke Group Ltd.,* No. 95-Civ.-3919, 1997 WL 727484, at *3 (S.D.N.Y. Nov. 21, 1997), the pleading requirements for such a claim, set forth in C.P.L.R. § 3016(a), do not apply, *see Sabatowski v. Fisher Price Toys,* 763 F.Supp. 705, 713 (W.D.N.Y.1991), *citing Erie,* 304 U.S. 64, 58 S.Ct. 817; *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986); *Geisler v. Petrocelli,* 616 F.2d 636, 640 (2d Cir.1980). Instead, the allegations in the Amended Complaint regarding Nickerson's claim for defamation need only comply with the liberal pleading requirements set forth in Fed.R.Civ.P. 8. *Id.*

*7 In order to state a claim for defamation under New York law, a plaintiff must allege facts which, if proved, would show "(1) a defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on face of statement)." *Campbell v. Kane, Kessler, P.C.,* No. 02-Civ.-1680, 2004 WL 1234048, at *6 (S.D.N.Y. June 2, 2004). When deciding whether a complaint which purports to allege a claim of defamation complies with Rule 8,

courts have considered whether said complaint references the alleged defamatory statement, identifies who made the statement, when it was made, the context in which it was made, whether it was made orally or in writing and whether it was made to a third party. *See Sabatowski,* 763 F.Supp. at 714, *citing Wanamaker v. Columbian Rope Co.,* 713 F.Supp. 533 (N.D .N.Y.1989).

Pursuant to C.P.L.R. § 215(3), an action to recover damages for, among other things, libel, such as the claim alleged here in Count IV of the Amended Complaint, must be commenced within one year. Because, Defendants argue, the alleged defamatory statements were made at a union trial which occurred on December 11, 2002, and because this action was commenced more than a year after that date, Nickerson's claim for defamation and libel must be dismissed.

In her Amended Complaint, Nickerson alleges that "Defendants, and each of them, have made false and injurious statements of facts concerning plaintiff ... including the statements made at that union 'trial' that was brought against plaintiff ... in which the union attempted to show that plaintiff *'repeatedly abused her authority as president of the local and how she intentionally and maliciously went out of her way to do what was not in the best interests of those who put her in office.' '* Am. Compl. ¶ 61 (emphasis added). The quoted language is actually a statement made by Striffler's attorney in her opening statement to the panel at Nickerson's union trial, held on December 11, 2002, a transcript of which is attached to the Amended Complaint as Exhibit C. *See* Ex. C to Am. Compl., 12:12-15. Nickerson further sets forth the allegation that "Defendants, and each of them, continued to make such false and injurious statements...." Am. Compl. ¶ 63.

In her opposition papers, and again at oral argument, Nickerson contends that while the original publication of the defamatory statement was made outside of the statute of limitations, the statement has been republished several times since then, to wit, by Hanson to deny her claims for vacation pay, by Hanson and the Union in a claim for misappropriation made to its surety bond carrier, and in a letter by Hanson to the Union membership. However, these allegations are absent from the Amended Complaint, with the exception of the allegation that "[Nickerson's] requests for payment ... were refused by defendants, who instead, voiced allegations against her of improper practices in her performance as President, which allegations were, and are, unfounded and unsubstantiated, and offered only to retaliate against and defame [Nickerson] personally." Am. Compl. ¶

Case 1:22-cv-01246-TJM-TWD    Document 7    Filed 12/19/22    Page 33 of 44

Nickerson v. Communication Workers of America Local 1171, Not Reported in...

2005 WL 1331122

22. Nickerson fails to allege even an approximate date of republication of the alleged defamatory statements. As such, Nickerson fails to state a claim for defamation and libel, and therefore, Defendants' motion to dismiss said claim is granted.

### 3. Count V-Abuse of Process

**\*8** Defendants next seek dismissal of Nickerson's claim for abuse of process, set forth in Count V of the Amended Complaint, on the grounds that it is not timely in accordance with the statute of limitations set forth in N.Y. C.P.L.R. § 215(3), and alternatively, because it fails to plead a cause of action for abuse of process in accordance with New York law.

Courts have interpreted the one-year statute of limitations set forth in C.P.L.R. § 215(3) to apply to a claim for abuse of process. *See Lucas v. Novogratz,* No. 01-CV-5445, 2002 WL 31844913, at \*6 (S.D.N.Y. Dec. 18, 2002). Such a cause of action accrues, and the statute of limitations begins to run, from the date of the institution of process. Here, Defendants argue, the "process" alleged was in the form of charges that were heard on December 11, 2002. Although Nickerson fails to plead the date those charges were filed against her, in Footnote 4 of her opposition memorandum, she mentions that they were filed in April 2002. *See* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 32, n. 4, Dkt. No. 27. Because this action was commenced more than one year after that date, or even the date of the trial, Defendants argue that Nickerson's claim for abuse of process must be dismissed.

Moreover, Defendants argue, Nickerson has failed to plead that any process has been issued, and to the extent the charged filed by Striffler are considered process, Nickerson fails to plead the proper motivation of Striffler in commencing process. Nickerson contends, without supporting authority, that the process here is continuing, beginning with the union trial and continuing with the election process, the audit process, a DOL investigation, and the surety bond carrier claim.

To state a claim for abuse of process, it is necessary that plaintiff plead the essential elements of the claim, one of which is that process, either civil or criminal, has issued. Courts define "process" as a "direction or demand that the person to whom it is directed perform or refrain from the doing of some prescribed act." *Julian J. Studley, Inc. v. Lefrak,* 41 N.Y.2d 881, 393 N.Y.S.2d 980, 982 (1977). Moreover, in order to establish a claim for abuse of process, the process must have been issued by or filed in a court. *See Glaser v. Kaplan,* 170 N.Y.S.2d 522, 524-525 (App.Div.1958). Here,

to be sure, although Nickerson argues that the process at issue here includes the commencement of the union trial as well as the election process, the audit process, a DOL investigation, and the surety bond carrier claim, she only pleads facts regarding the union trial. In any event, none of the scenarios mentioned by Nickerson fall within the definition of "process" for the purpose of an abuse of process claim in New York. Moreover, at oral argument, Nickerson conceded that the commencement of the union trial is not the equivalent of process filed in a court. Therefore, Defendants' motion for dismissal of Count V of the Amended Complaint is granted.

### D. Count VI-LMRDA

**\*9** Nickerson's final cause of action is for a violation of sections 101(a)(2), 101(a)(5) and 609 the Labor Management Reporting and Disclosure Act ("LMRDA"), codified at 29 U.S.C. §§ 411(a)(2), 411(a)(5) and 529, respectively. Defendants argue that Nickerson may not bring this cause of action because she is not a member of the Union, she did not exhaust her available remedies within the Union, and because she has failed to state a claim under §§ 101(a)(2), 101(a)(5) or 609 of the LMRDA. Because the court finds that Nickerson has not stated a claim under the LMRDA, Defendants' membership and exhaustion arguments need not be addressed.

Section 101(a)(2) of the LMRDA protects a union member's rights of free speech and assembly, § 101(a)(5) requires that a union member be given notice and a hearing prior to being disciplined, and § 609 protects a member from being disciplined for exercising any rights pursuant to Title I of the Act, which encompasses §§ 101(a)(2) and (5). *See Maddalone v. Local 17, United Broth. of Carpenters,* 152 F.3d 178, 183 (2d Cir.1998). In order to state a claim cognizable under Title I, a plaintiff must plead "[a] direct infringement of membership rights or a real threat to the democratic integrity of the union [.]" *Franza v. Intern, Nroth, of Teamsters, Local 671,* 869 F.2d 41, 48 (2d Cir.1989). Defendants argue that Nickerson failed to allege that she was prevented from exercising her speech or assembly rights, or that she was disciplined without notice and a hearing, and thus her claims pursuant to §§ 101(a)(2) and (5) must be dismissed. Moreover, Defendants contend that Nickerson fails to allege that she was disciplined for exercising her rights pursuant to either § 101(a)(2) or § 101(a)(5) and therefore her § 609 claim must also be dismissed.

In the Amended Complaint, Nickerson alleges that (1) she exercised her right to free speech by refusing to lie to the DOL

Case 1:22-cv-01246-TJM-TWD   Document 7   Filed 12/19/22   Page 34 of 44

Nickerson v. Communication Workers of America Local 1171, Not Reported in...

2005 WL 1331122

and UIB on behalf of Striffler, *see* Am. Compl. ¶ 77, and that (2) she has been retaliated against and thus disciplined by the (a) bringing of charges and subsequent trial which resulted in her losing her re-election bid, *see* Am. Compl. ¶¶ 75-76, 78, and (b) the refusal by Defendants to pay her vacation benefits, *see* Am. Compl. ¶ 76. Section 101(a)(2) has been interpreted by the Second Circuit to "protect [ ] union members from direct interference with union membership rights in retaliation for their expression of opinions concerning union activities." *Maddalone,* 152 F.3d at 183, *citing Cotter v. Owens,* 753 F.2d 223, 228 (2d Cir.1985). Here, Nickerson has failed to properly plead facts in support of a conclusion that her refusal to lie to the DOL and UIB on behalf of a Union member constitutes the expression of an opinion regarding union activities. Such action by Nickerson is clearly distinguishable from other actions which were deemed protected by § 101(a)(2), such as, for example, a public demonstration in protest of union layoffs. *See Maddalone,* 152 F.3d at 182, 185. For this reason, Nickerson cannot state a claim pursuant to § 101(a)(2).

 *10 In order to state a claim under either §§ 101(a)(5) or 609, a plaintiff must allege that he or she was subject to some discipline on behalf of the defendant union. *See id.* Here, Nickerson claims that the charges brought against her by Striffler and the subsequent union trial based on same constitute discipline pursuant to the LMRDA. However, in order to be considered discipline under that act, there must have been some "punishment authorized by the union as a collective entity to enforce its rules." *Id., quoting Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6,* 493 U.S. 67, 91, 110 S.Ct. 424 (1989). Here, Nickerson does not allege a collective action against her by the Union, but an action taken by one Union member, Striffler. *See Maddalone,* 152 F.3d at 185. Moreover, as Defendants correctly note, under § 609, discipline is "meant to refer only to punitive actions diminishing membership rights[,]" *see Yerdon v. Teamsters*

*Local 1149,* 886 F.Supp. 226, 234 (N.D.N.Y.1995) (citation omitted), *aff'd,* 91 F.3d 370 (2d Cir.1996), and therefore, where charges resulted in no decision at all, as in *Yerdon,* or, as here, total exoneration, no "discipline" has occurred. Finally, as Defendants correctly argue, Nickerson's allegation that she was disciplined by the withholding of benefits does not state a claim under § 101 because, like the claims made by the plaintiff in *Yerdon,* also a union employee, that defendants union and union officials retaliated against her by, among other things, "refusing to sign her paychecks [and] altering her salary and vacation[,]" they deal with her rights as a union employee, not a union member. *See id.* at 232-233. For these reasons, not only must Nickerson's § 101(a)(2) claim fail, she likewise cannot state a claim under either § 101(a)(5) or § 609. Therefore, Defendants' motion to dismiss Count VI of the Amended Complaint is granted.

## IV. Conclusion

The court concludes, after careful consideration of the papers submitted and the oral argument of both parties, that Plaintiff has failed to state a claim upon which relief may be granted as to Counts I, III, IV, V and VI of the Amended Complaint. Accordingly, Defendants' motion to dismiss said claims pursuant to Fed.R.Civ.P. 12(b)(6) is hereby GRANTED.

The court retains jurisdiction of this action pursuant to 28 U.S.C. § 1331, as federal preemption applies to Plaintiff's breach of contract claim, set forth in Count II of the Amended Complaint.

IT IS SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2005 WL 1331122

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:22-cv-01246-TJM-TWD    Document 7    Filed 12/19/22    Page 35 of 44

2006 WL 39063
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

John V. MUZIO and Theresa Muzio, Plaintiffs,
v.
INCORPORATED VILLAGE OF BAYVILLE, James
A. Goolsby, Victoria Siegel, Florence Genovese,
and Pine Lane Association, Inc., Defendants.

No. CV–99–8605 (SJF).
|
Jan. 3, 2006.

OPINION & ORDER

FEUERSTEIN, J.

**\*1** Plaintiffs John V. Muzio (John) and Theresa Muzio (Theresa) (collectively, plaintiffs) commenced this civil rights action against defendants Incorporated Village of Bayville (the Village), James A. Goolsby (Goolsby), Victoria Siegel (Siegel), Florence Genovese (Genovese) and Pine Lane Association, Inc. (Pine Lane),[1] alleging violations of 42 U.S.C. §§ 1983, 1985 and 3617, and state law claims for negligence, malicious prosecution, abuse of process, and false arrest. The Village, Goolsby, Siegel and Genovese (collectively, the Village defendants) now move pursuant to Rule 37 of the Federal Rules of Civil Procedure for dismissal of the complaint for plaintiffs' failure to comply with discovery orders or, in the alternative, pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the complaint as against them.[2] For the reasons stated herein, the Village defendants' motion is granted in part and denied in part.

[1]     By order dated March 19, 2004, I granted Pine Lane's motion for summary judgment and dismissed the complaint in its entirety as against Pine Lane.

[2]     In the March 19, 2004 order, I *sua sponte* (1) granted summary judgment dismissing all of Theresa's claims against the Village defendants; and (2) dismissed John's state law claims and claims pursuant to 42 U.S.C. § 1985 and 42

U.S.C. § 1983, except to the extent John's § 1983 claims are based on theories of false arrest, malicious prosecution, and Fourth Amendment violations, against the Village defendants as time-barred. Accordingly, the only remaining claims against the Village defendants are (1) John's § 1983 claims based on theories of false arrest, malicious prosecution, and Fourth Amendment violations; (2) John's claims under the Fair Housing Act, 42 U.S.C. § 3617; and (3) John's claims for punitive damages against the Village defendants.

I. BACKGROUND

A. Factual Background[3]

[3]     The facts are derived from the Village defendants' statement of material facts pursuant to Local Rule 56.1, the accompanying affidavits and the pleadings. As plaintiffs have not submitted any opposition to the Village defendants' motion, the facts are undisputed.

1. The Parties
Plaintiffs own real property located at 427 Bayville Avenue, situated within the Village.

The Village is a New York domestic municipal corporation. Goolsby has been employed by the Village as a building inspector, with code enforcement responsibilities, since 1995. At all relevant times, Siegel was the mayor of the Village. At all relevant times, Genovese was the Village Justice Court Clerk.

2. Facts
Goolsby issued appearance tickets, number 1659 and 1660, dated January 5, 1995, to John. Ticket 1659 was issued under Chapter 75, Article IV, ¶ 75–26 of the Village Code, in connection with a "large container" on First Street adjacent to and west of plaintiffs' property. Ticket 1660 was issued under Chapter 80–61, Paragraph A of the Village Code as a result of plaintiffs continued "willful[ ], wrongful[ ], and unlawful[ ] maint[enance of] a four foot high stockade * * *." The ordinance "permits only a thirty inch high fence within thirty feet of the intersection of Bayville Avenue and First Street."

In 1995, a lawsuit was commenced in Justice Court for the Village of Bayville entitled *People of the State of New York v.*

*John Muzio,* under docket numbers 1659 and 1660. On March 15, 1995, a trial was held before Judge Anthony D. Perry. Judge Perry ruled (1) that John was guilty of a violation of Chapter 75, article IV, ¶ 75–26 of the Village Code and should be fined fifty dollars ($50.00) and sentenced to fifteen (15) days imprisonment; (2) that John was guilty of a violation of Chapter 80–61, Paragraph A, of the Village Code and should be fined in the amount of one hundred dollars ($100.00); and (3) that if John removed or caused to be removed the "large container" within five (5) business days from service of the decision of the court, the 15–day sentence would be suspended.

John appealed Judge Perry's decision. By order dated March 18, 1997, the Appellate Term reversed the convictions.

  B. Procedural Background
 **2**  On December 29, 1999, plaintiffs *pro se* commenced this civil rights action under, *inter alia,* 42 U.S.C. § 1983, alleging violations of their First, Fourth, Sixth and Fourteenth Amendment rights. On May 11, 2000, Magistrate Judge E. Thomas Boyle entered an initial scheduling order, *inter alia,* directing that discovery by completed by October 31, 2000. By order dated January 31, 2001, Magistrate Judge Boyle extended the discovery deadline until July 31, 2001.

On or about February 28, 2001, plaintiffs, having retained an attorney to represent them in this matter, served an amended complaint, alleging that defendants intentionally targeted them to investigation, harassment, coercion, unlawful searches, and enforcement and judicial proceedings for alleged violations of the Village Code. In addition, plaintiffs alleged that defendants "had conversations and communications whereby they agreed to execute * * * [a] discriminatory scheme * * * [and] committed overt acts in furtherance of such agreement * * * for the purpose of depriving the Plaintiffs of their [constitutional rights] * * * [and that the conspiracy] was motivated by racial, class based, and/or other invidiously discriminatory animus * * *." (Amended Complaint [Amend. Compl.], ¶¶ 28–31).

By order dated August 29, 2001, Magistrate Judge Boyle stayed discovery pending further order in light of an Order of Rehabilitation dated May 29, 2001 issued by the Commonwealth of Pennsylvania. By order dated October 30, 2001, the Honorable Denis R. Hurley [4] stayed and administratively closed this action without prejudice because the Village defendants' insurance carrier, Reliance Insurance

Company, had been placed in liquidation. The action was restored to the active calendar in December 2002.

[4]   This action was randomly reassigned from Judge Hurley to me on October 16, 2003.

By order dated January 14, 2003, Magistrate Judge Boyle granted a final extension of the discovery deadline until March 31, 2003.

By letter application dated April 8, 2003, the Village defendants requested that Magistrate Judge Boyle enter a conditional order of preclusion against plaintiffs for their failure to respond to various discovery demands dated April 16, 2001 and May 2, 2001, respectively. In opposition, plaintiffs' counsel, *inter alia,* advised Magistrate Judge Boyle that he objected to the discovery demands as duplicitous.

By order dated May 16, 2003, Magistrate Judge Boyle gave plaintiffs ten (10) days within which to comply with all outstanding discovery demands, extended the discovery deadline until June 30, 2003, and denied the Village defendants' application for a preclusion order without prejudice to renewal.

By letter application dated June 11, 2003, the Village defendants renewed their request for an order of preclusion against plaintiffs on the ground that the outstanding discovery was not provided within the time prescribed by the May 16, 2003 order. In opposition, plaintiffs' counsel advised the court that numerous discovery had been provided and that he objected to the supplemental discovery demands relating to the amended complaint as duplicitous. By order dated June 25, 2003, Magistrate Judge Boyle denied the Village defendants' application.

 **3**  According to the Village defendants, plaintiffs have still failed to respond to their supplemental interrogatories dated April 16, 2001 and to their various discovery demands dated April 16, 2001 and May 2, 2001, respectively, and have repeatedly failed to appear for depositions.

II. DISCUSSION

  A. Standard of Review [5]
[5]   Although the Village defendants designate their motion as one pursuant to, *inter alia,* Rule 56 of the Federal Rules of Civil Procedure, their

arguments in support of dismissal are, in substance, for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Indeed, defendants fail to submit any evidence outside of the four corners of the pleadings in support of their motion. Accordingly, I will utilize the standard for a motion to dismiss brought pursuant to Rule 12(b)(6).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only where "it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Levitt v. Bear Stearns & Co.,* 340 F.3d 94, 101 (2d Cir.2003)(internal quotations and citations omitted). In deciding a motion to dismiss, the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir.2003); *New v. Ashcroft,* 293 F.Supp.2d 256, 257 (E.D.N.Y.2003). The court's task "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Levitt,* 340 F.3d at 101 (internal quotations and citations omitted). The issue is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims. *See New,* 293 F.Supp .2d at 257 (citing *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 [2d Cir.1995] ).

However, the Court is not required to credit conclusory statements unsupported by factual assertions of fact or legal conclusions and characterizations couched as factual allegations. *See Papasan v. Allain,* 478 U.S. 265, 268, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002)(stating that conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss). The Court must limit itself to the facts alleged in the complaint, to any documents attached to the complaint as exhibits or incorporated by reference therein, to matters of which judicial notice may be taken, or to documents within plaintiff's possession or of which plaintiffs had knowledge and relied on in bringing suit. *See Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *Spencer Trask Software and Information Servs. LLC v. RPost Intl. Ltd.,* No. 02 Civ. 1276, 2003 WL 169801, at *4 (S.D.N.Y. Jan. 24, 2003).

B. Section 1983 Claims

42 U.S.C. § 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

**\*4** Thus, to state a claim under section 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Adickes v. S.H. Kress & Co.* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

1. Claims against the Individual Defendants in their Personal Capacities

The Village defendants contend that plaintiffs' complaint fails to set forth any specific allegations of fact regarding how or in what way Genovese, Siegel or Goolsby (collectively, the individual defendants) deprived them of their constitutional rights.

In their complaint, plaintiffs allege, *inter alia,* (1) that Goolsby "[acted] unlawfully in excess of that permitted by law, and created a climate of intimidation and depraved indifference" to their constitutional rights, (Complaint [Compl.], ¶ 7); (2) that Siegel "allowed the condition(s) complained of by plaintiff(s) to continue unabated, * * * [and] allowed or caused to be allowed, the continuing and unabated harrassment [sic], co-ersion [sic], intimidation, and deprivation of property rights, and abuse of process and authority, against the Plaintiff(s) * * * through indiscriminate and arbitrary 'code-enforcement' action(s), and selective enforcement * * *," (Compl., ¶¶ 8–9); and (3) that Genovese "committ[ed] continuing abuses of her official authority and lawful discretion in making public and repetitive defamatory and inflammatory statements about and to each Plaintiff * * *," (Compl., ¶ 10). Plaintiffs make no specific allegations against the individual defendants in their amended complaint.

Although "a claim for relief under 42 U.S.C. § 1983 only need allege that some person acting under color of state law deprived the claimant of a federal right," *Green v. Maraio, 722 F.2d 1013, 1016 (2d Cir.1983)*, it is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Back v. Hastings on Hudson Union Free School Dist.,* 365 F.3d 107, 122 (2d Cir.2004)(internal quotations and citation omitted); *see Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir.1997). A complaint based on a violation under section 1983 that does not allege the personal involvement of a defendant is "fatally defective on its face." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987) (internal quotations and citations omitted).

A defendant in a section 1983 action may not be held liable merely because he or she held a high position of authority. *Davis v. County of Nassau,* 355 F.Supp.2d 668, 676 (E.D.N.Y.2005). Rather, personal involvement of a supervisory or high official may be established by evidence of direct participation by that official in the challenged conduct, or by evidence of that official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *Hayut v. State Univ. of New York,* 352 F.3d 733, 753 (2d Cir.2003). In order to defeat a motion to dismiss, a section 1983 complaint must "allege particular facts indicating that an individual defendant was personally involved in the deprivation of the plaintiff's constitutional rights; mere 'bald assertions and conclusions of law' do not suffice ." *Davis,* 355 F.Supp.2d at 677 (quoting *Leeds v. Meltz,* 85 F .3d 51, 52 [2d Cir.1996] ). A complaint which fails to offer any facts indicating how a individual defendant in a supervisory capacity was personally involved in a constitutional violation cannot withstand dismissal. *Id.*

**\*5** Plaintiffs fail to offer any specific facts indicating how any of the individual defendants were personally involved in John's arrest, prosecution or purported Fourth Amendment violations. The conclusory allegations (1) that Goolsby "created a climate of intimidated and depraved indifference" to their constitutional rights, (Complaint [Compl.], ¶ 7); (2) that Siegel "allowed the condition(s) complained of by plaintiff(s) to continue unabated, * * * through indiscriminate and arbitrary 'code-enforcement' action(s), and selective

enforcement * * *," (Compl., ¶¶ 8–9); and (3) that Genovese made "public and repetitive defamatory and inflammatory statements about and to each Plaintiff * * *," (Compl., ¶ 10), without more, are insufficient to state a viable section 1983 claim based on the remaining theories of false arrest, malicious prosecution and Fourth Amendment violations against those defendants. Specifically, plaintiffs fail to indicate, *inter alia,* that the individual defendants directly participated in the alleged constitutional violations; were informed of the alleged constitutional violations but failed to remedy them; created or tolerated a policy or custom of false arrest, malicious prosecution or Fourth Amendment violations; were grossly negligent in their supervision of those who were purportedly involved in the constitutional violations; or had some actual indication that a constitutional violation was occurring, yet failed to act. Accordingly, the section 1983 claims are dismissed as against the individual defendants.

2. Section 1983 Claims against the Village and the Individual Defendants in their Official Capacities
The Village defendants contend that plaintiffs' § 1983 claims against the Village and the individual defendants in their official capacities fail because they have not established the existence of a municipal policy or custom that deprived plaintiffs of a constitutional right.

A municipality or municipal entity cannot be held liable under § 1983 on a *respondent superior* theory. *See, Monell v. Department of Soc. Servs. of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Linder v. City of New York,* 263 F.Supp.2d 585, 591 (E.D.N.Y.2003). However, a municipal entity may be liable if the alleged offending conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipal] officers[,] * * * [or] governmental 'custom' even though such a custom has not received formal approval through the [municipality's] official decisionmaking [sic] channels." *Monell,* 436 U.S. at 690, 98 S.Ct. 2018.

To establish the existence of a municipal policy or custom, the plaintiff must allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the

policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees. *Moray v. City of Yonkers,* 924 F.Supp. 8, 12 (S.D.N.Y.1996); *see also Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 478 (E.D.N.Y.2002). "Mere assertions that a municipality has a custom or policy of violating constitutional rights are insufficient to state a Section 1983 claim 'in the absence of allegations of fact tending to support, at least circumstantially, such an inference.' " *Davis,* 355 F.Supp.2d at 678 (quoting *Dwares v. City of New York,* 985 F.2d 94, 100 [2d Cir.1993] ).

 **\*6** Although plaintiffs conclusorily allege the existence of a "formal or de facto policy" on the part of the Village with respect to the alleged constitutional violations of which they complain, (Compl., ¶ 39), they have not alleged any facts tending to support an inference that such a formal practice or custom endorsed by the Village actually existed. Accordingly, plaintiffs have not established a valid *Monell* claim against the Village. *See, e.g. Davis,* 355 F.Supp.2d at 678 (dismissing the plaintiff's municipal liability claims where the complaint failed to allege any facts of a municipal policy or custom beyond the specific instance that gave rise to the complaint). Likewise, plaintiffs' cannot establish a valid section 1983 claim against the individual defendants in their official capacities. *See, e.g. Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)(holding that official capacity suits generally represent only another way of pleading an action against an entity or which an officer is an agent). Therefore, plaintiff's § 1983 claims are dismissed in their entirety as against the Village and the individual defendants in their official capacities.

### 3. Conspiracy Claims
The Village defendants contend that plaintiff's conclusory allegations of a conspiracy are insufficient to state a cause of action under § 1983.

To establish a conspiracy claim under section 1983, a plaintiff must demonstrate (1) the existence of an agreement; (2) to act in concert to inflict an unconstitutional injury; (3) an overt act done in furtherance of that agreement; and (4) damages resulting therefrom. *See Ciambriello v. County of Nassau,* 292 F.3d 307, 324–325 (2d Cir.2002). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless

amplified by specific instances of misconduct." *Id.* at 325 (internal quotations and citation omitted). A complaint that fails to provide any details as to the time and place of the purported conspiracy is insufficient to withstand dismissal. *See Id.*

Plaintiffs' conclusory allegations of a conspiracy, absent any details as to the time and place of the purported conspiratorial acts, are insufficient to state a valid claim under section 1983. *See, e.g. Collins v. City of New York,* No. 05–CV–5595, 2005 WL 3501878, at \*2 (E.D.N.Y. Dec. 21, 2005) (dismissing plaintiff's conspiracy claims, *inter alia,* for his failure to allege, except in the most conclusory terms, the existence of a conspiracy; *Del Re v. Del Re,* No. 05–CV–3490, 2005 WL 1962341, at \*2 (E.D.N.Y. Aug. 10, 2005)(accord). Accordingly, to the extent plaintiffs' conspiracy claims were not previously dismissed as time-barred, they are dismissed in their entirety for failure to state a cause of action.

### 4. Selective Enforcement Claims
 **\*7** The Village defendants contend, *inter alia,* that plaintiffs cannot establish a case of selective enforcement because they cannot demonstrate that they were selected for code enforcement as compared to others similarly situated who were not.

A plaintiff can bring an equal protection claim as a "class of one" where he or she alleges that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *see also Harlen Associates v. Incorporated Village of Mineola,* 273 F.3d 494, 499 (2d Cir.2001)(holding that a claim of selective enforcement requires the plaintiffs to show that they were treated differently from other similarly situated individuals and that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person). In order to succeed on such a claim, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Neilson v. D'Angelis,* 409 F.3d 100, 104 (2d Cir.2005). The "similarly situated" test requires that a plaintiff asserting a "class of one" claim establish (1) that "no rational person could regard the circumstance of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy;

and [2] that the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Id.* at 105.

However, plaintiffs are not required to identify in their complaint actual instances where others have been treated differently than themselves. *See DeMuria v. Hawkes,* 328 F.3d 704, 707 (2d Cir.2003)(holding that a general allegation that the defendant treated plaintiffs differently than others similarly situated was sufficient, albeit barely, to meet the minimal level for a "class of one" claim at the pleading stage); *Cathedral Church of the Intercessor v. Incorporated Village of Malverne,* 353 F.Supp.2d 375, 383 (E.D.N.Y.2005)(holding that although other Circuits have determined otherwise, in this Circuit, there is no requirement that the plaintiffs identify in their complaint actual instances where others have been treated differently). Moreover, a general allegation of impermissible motive and of animus, or that there is no rational basis for the difference in treatment, is sufficient to state a "class of one" equal protection claim. *See DeMuria,* 328 F.3d at 707; *Cathedral Church,* 353 F.Supp.2d at 383. In addition, plaintiffs are required to allege intentional disparate treatment. *DeMuria,* 328 F.3d at 707.

Plaintiffs allege (1) that defendants "did by [sic] intentionally * * * target and subject the Plaintiffs as owners of property(s) * * * to investigation, harassment, coercion, unlawful search(es), enforcement proceedings and/or judicial and other process * * *," (Amend.Compl.¶ 11); and (2) that such conduct "was brought as part of the Defendants invidious scheme to discriminatorily enforce Bayville Village Code * * * against the Plaintiffs * * *, (Amend.Compl.¶ 12). However, plaintiffs fail to make even a general allegation that they were treated differently than other property owners similarly situated. Accordingly, to the extent plaintiffs' selective enforcement claims were not previously dismissed as time-barred, those claims are dismissed for failure to meet even the minimal pleading requirements to state a viable cause of action.

### C. Defamation Claims

**\*8** The Village defendants contend, *inter alia,* that to the extent plaintiffs are asserting state law claims for defamation, those claims should be dismissed as against the individual defendants because they do not set forth the particular words of which plaintiffs complain, as required by N.Y. C.P.L.R. § 3016.

Contrary to the Village defendants' contention, a claim for defamation asserted in federal court is governed by the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, not by the particularized pleading requirements of N.Y. C .P.L.R. § 3016. *See Unique Sports Generation, Inc. v. LGH–III, LLC,* No. 03 Civ. 8324, 2005 WL 2414452, at \*9 (S.D.N.Y. Sept. 30, 2005); *Nickerson v. Communication Workers of America Local 1171,* No. 04 CV 0875, 2005 WL 1331122, at \*6 (N.D.N.Y. May 31, 2005); *Sabatowski v. Fisher Price Toys,* 763 F.Supp. 705, 713 (W.D.N.Y.1991); *Surgimex, Inc. v. Proctor & Gamble Distributing Co.,* No. CV–82–2503, 1987 WL 12559, at \*7 (E.D.N.Y. June 5, 1987). Under Rule 8, the plaintiff need not specifically plead the alleged defamatory words in his or her complaint; rather, he or she need only provide the defendants with sufficient notice of the communications of which he or she complains so as to enable the defendant to prepare a proper defense. *See Unique Sports,* 2005 WL 2414452, at \*9.

To state a cause of action for defamation under New York law, the plaintiff must establish (1) that a defamatory statement of fact was made concerning him or her; (2) that the defendant published that statement to a third party; (3) that the statement was false; (4) that there exists some degree of fault; (5) and that there are special damages or that the statement is defamatory *per se,* i.e. it disparaged the plaintiff in the way of his or her office, profession or trade. *See Unique Sports,* 2005 WL 2414452, at \*8. In determining whether a defamation claim complies with the pleading requirements of Rule 8, the court should consider whether the complaint references the alleged defamatory statement; identifies the maker of that statement; and indicates when the statement was made, in what context it was made, whether it was made orally or in writing and whether it was made to a third party. *See Nickerson,* 2005 WL 1331122, at \*7.

Even under the liberal pleading standard of Rule 8, plaintiffs' allegations fail to state a valid claim for defamation under New York law. *See, e.g. Nickerson,* 2005 WL 1331122, at \*7 (dismissing plaintiff's defamation claim where the complaint failed to allege even an approximate date of publication of the defamatory statements). The most specific allegation that plaintiffs make with respect to their defamation claim is that Genovese made "public and repetitive defamatory and inflammatory statements about and to each Plaintiff * * *." (Compl.¶ 10). Accordingly, plaintiffs' defamation claims are dismissed in their entirety.

### D. Punitive Damages

**\*9** The Village defendants contend that plaintiffs' claims for punitive damages against the Village should be dismissed because punitive damages are never available against a municipality.

Punitive damages are not recoverable in a section 1983 action against a municipality. *See City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Davis,* 355 F.Supp.2d at 675. Accordingly, plaintiffs claims for punitive damages against the Village are dismissed.

E. Rule 37

Rule 37(b) of the Federal Rules of Civil Procedure provides, in relevant part, as follows:

"If a party * * * fails to obey an order to provide or permit discovery, * * * the court * * * may make such orders in regard to the failure as are just, and among others the following:

* * *

(C) An order * * * dismissing the action or proceeding or any part thereof * * *.

Although a court has the authority to impose sanctions under Rule 37(b) for noncompliance with a "clearly articulated" order requiring specific discovery, *see, Banjo v. United States,* No. 95 Civ. 633, 1996 WL 426364, at *4 (S.D.N.Y. July 30, 1996), since dismissal is a harsh remedy, it should be granted only where the plaintiff's noncompliance is the result of "willfulness, bad faith, or any fault" in the course of discovery, and only after the plaintiff has been warned that his or her noncompliance may result in dismissal. *Id.* (internal quotations and citation omitted). Dismissal is appropriate, however, "where the plaintiff has demonstrated an unwillingness to fulfill the discovery obligations imposed by the Federal Rules of Civil Procedure." *Id.*

In light of Magistrate Judge Boyle's denial of the Village defendants' most recent application for a preclusion order, and of plaintiffs' production of various discovery responses or objections to the discovery demands, the drastic remedy of dismissal is not appropriate in this case. Accordingly, the branch of the Village defendants' motion which seeks dismissal pursuant to Rule 37 is denied.

III. CONCLUSION

The Village defendants' motion is granted to the extent that the section 1983 and defamation claims are dismissed in their entirety and the punitive damages claim is dismissed as against the Village, and the motion is otherwise denied. As John's Fair Housing Act claim and punitive damage claims as against the individual defendants remain, the parties are directed to appear in my courtroom at 1010 Federal Plaza, Central Islip, New York on January 18, 2006, at 12:30 p.m. for a settlement conference with authority or persons with authority to resolve this action. Further the parties are directed to engage in good-faith negotiations prior to the conference.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 39063

---

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 3172999

2017 WL 3172999
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Thomas J. MORAN, Plaintiff,

v.

PROSKAUER ROSE LLP; Jerold D. Jacobson;
and Keisha Ann Grace Gray, Defendants.

1:17-cv-00423 (MAD/TWD)
|
Signed 07/26/2017

**Attorneys and Law Firms**

APPEARANCES: THOMAS J. MORAN, 500 16th St., Apt.
203, Watervliet, New York 12189, Plaintiff, pro se.

## ORDER

Mae A. D'Agostino, U.S. District Judge

 **\*1** Plaintiff commenced this action *pro se* on April 17,
2017 against Proskauer Rose LLP ("Proskauer Rose"),
Jerold D. Jacobson ("Defendant Jacobson"), and Keisha
Ann Grace Gray ("Defendant Gray"). *See* Dkt. No. 1. In
an Order and Report-Recommendation dated May 1, 2017,
Magistrate Judge Dancks granted Plaintiff's application to
proceed *in forma pauperis* for filing purposes only and
denied Plaintiff's motion for appointment of counsel. *See*
Dkt. No. 6 at 2, 9. In reviewing the sufficiency of the
complaint, Magistrate Judge Dancks concluded that the Court
lacks subject matter jurisdiction over Plaintiff's claims, and
therefore, despite Plaintiff's *pro se* status, recommended that
Plaintiff's complaint be dismissed with prejudice. *See id.* at
9. On May 26, 2017, Plaintiff filed objections to Magistrate
Judge Dancks's Order and Report-Recommendation. *See* Dkt.
No. 7.

According to the complaint, Proskauer Rose is a global law
firm and Defendants Jacobson and Gray are attorneys with
Proskauer Rose. *See* Dkt. No. 1 at 5. Plaintiff asserts that
Proskauer Rose is counsel for non-party Jewish Board of
Family and Children's Services ("JBFCS"), Plaintiff's former
employer. *See id.* at 5-6. As Magistrate Judge Dancks noted,
according to publicly available documents, Plaintiff filed a
complaint with the New York State Division of Human Rights
("NYSDHR") against JBFCS. *See* Dkt. No. 6 at 4.

Plaintiff alleges that Defendants Jacobson and Gray appeared
at a conference before the NYSDHR on behalf of JBFCS.
*See* Dkt. No. 1 at 5-6. Plaintiff alleges that, at the time of
this conference, Defendants Jacobson and Gray were not
appropriately licensed to practice law in New York State
through the New York State Unified Court System. *See id.*
Plaintiff alleges that he told two of NYSDHR's employees
that "allowing two attorneys with no valid law licenses into
this conference to practice law is fraudulent." *Id.* at 6.

Moreover, Plaintiff alleges that Defendant Jacobson wrote
a "fraudulent" email response to Plaintiff's NYSDHR
complaint since Defendant Jacobson's "law license [was]
expired at the time the [r]esponse was sent." *Id.* Plaintiff
also argues that, because of Defendant Jacobson's personal
relationship with the JBFCS, it is inappropriate for him
"to handle the issues of the Jewish Board." *Id.* at 7.
Furthermore, Plaintiff claims that Defendant Gray "tricked
[Maria] Di Cosimo of Lexis-Nexis into providing Ms.
Gray with information that was obtained through Ms. Di
Cosimo's connection with Lexis-Nexis fraudulently." *Id.*
Plaintiff requests $240 million in total from Defendants and
an injunction preventing Defendant Proskauer Rose from
"continuing its practice of allowing attorneys with no law
licenses to practice law in the State of New York as well as
the United States." *Id.* at 8.

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has opined that the court is obligated
to "make reasonable allowances to protect *pro se* litigants"
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710
F.2d 90, 95 (2d Cir. 1983)). However, "[t]he right of self-
representation does not exempt a party from compliance with
the relevant rules of procedural and substantive law." *Massie
v. Ikon Office Solutions, Inc.*, 381 F. Supp. 2d 91, 94 (N.D.N.Y.
2005) (quoting *Clarke v. Bank of New York*, 687 F. Supp. 863,
871 (S.D.N.Y. 1988)).

 **\*2** In reviewing a report and recommendation, a district
court "may accept, reject, or modify, in whole or in part,
the findings or recommendations made by the magistrate
judge." 28 U.S.C. § 636(b)(1)(C). When a party makes
specific objections to a magistrate judge's report, the district

Moran v. Proskauer Rose LLP, Not Reported in Fed. Supp. (2017)

2017 WL 3172999

court engages in *de novo* review of the issues raised in the objections. *See id.*; *Farid v. Bouey*, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008). When a party fails to make specific objections, the court reviews the magistrate judge's report for clear error. *See Farid*, 554 F. Supp. 2d at 307; *see also Gamble v. Barnhart*, No. 02-CV-1126, 2004 WL 2725126, *1 (S.D.N.Y. Nov. 29, 2004). As mentioned, Plaintiff has submitted objections to the Order and Report-Recommendation. *See* Dkt. No. 7.

Federal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005). Federal jurisdiction is available only when a "federal question" is presented or when the plaintiff and the defendant are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332. When a court lacks subject matter jurisdiction, dismissal of the complaint is mandatory. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Id.* (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

In order to invoke "federal question" jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, as Magistrate Judge Dancks concluded, Plaintiff has failed to allege a claim that arises under the Constitution or laws of the United States of America. Plaintiff's main allegation surrounds the state bar licensure of two private attorneys employed by a private limited liability partnership. *See* Dkt. No. 1 at 5. There is no federal claim that can be inferred from the facts alleged.

Plaintiff has submitted his allegations on a form that is provided by the Court for *pro se* litigants to file civil rights complaints pursuant to 42 U.S.C. § 1983 ("Section 1983"). *See id.* at 1. However, there is no indication from Plaintiff's allegations that a Section 1983 claim could be supported. In his objections, Plaintiff agreed with Magistrate Judge Dancks that the reason he used a civil rights complaint form was because it was provided to him by the Court. *See* Dkt. No. 7 at 4.

To state a Section 1983 claim, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640

(1980)). Moreover, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 187 (2d Cir. 2005) (quoting *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)). The conduct of a private actor may be considered state action when the private actor "is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).

**\*3** Defendants Jacobson and Gray are private attorneys working for a private law firm. *See* Dkt. No. 1 at 5. Plaintiff does not allege that Defendants had any affiliation with the State of New York beyond their licensure, and therefore, they cannot be deemed "state actors" under Section 1983. *See Licari v. Voog*, 374 Fed. Appx. 230, 231 (2d Cir. 2010) ("[P]rivate attorneys—even if the attorney was court appointed—are not state actors for the purposes of § 1983 claims.") (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)). Furthermore, Proskauer Rose's registration as a domestic limited liability partnership with the State of New York does not render it a "state actor." [1] *See Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003) (citing *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543-44 (1987)). Plaintiff has also failed to allege that Defendants conspired with any state actor to violate his constitutional rights. Accordingly, Plaintiff has failed to allege a cause of action that provides this Court with subject matter jurisdiction under 28 U.S.C. § 1331. Plaintiff's objections offer nothing to cure this defect.

[1]    As Magistrate Judge Dancks noted, Proskauer Rose is listed as a domestic registered limited liability partnership with the New York State Division of Corporations. *See* Dkt. No. 6 at 8 n.4.

As Magistrate Judge Dancks also found, Plaintiff has failed to establish a basis for diversity jurisdiction under 28 U.S.C. § 1332. *See* Dkt. No. 6 at 8. Diversity jurisdiction is only proper where "all of the adverse parties in a suit [are] completely diverse with regard to citizenship." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806)). For the purposes of diversity jurisdiction, the citizenship of limited liability partnerships, like Proskauer Rose, is determined by the citizenship of all of its members.

Moran v. Proskauer Rose LLP, Not Reported in Fed. Supp. (2017)

2017 WL 3172999

See *Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990); *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000).

Here, the complaint states that Plaintiff lives in Watervliet, New York, and that Defendants Jacobson and Gray are also citizens of New York. *See* Dkt. No. 1 at 1-2, 5. Proskauer Rose's citizenship is determined by the citizenship of each of its members, including Defendants Jacobson and Gray. [2] *See id.* As such, all parties are citizens of New York, and this Court lacks diversity jurisdiction over Plaintiff's claims. Accordingly, Plaintiff's complaint is dismissed.

[2]    Defendants Jacobson and Gray are listed as partners on the Proskauer Rose website. *Professionals*, Proskauer Rose, http://www.proskauer.com/professionals/ (last visited July 13, 2017).

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted). As Magistrate Judge Dancks found, lack of subject matter jurisdiction is a substantive defect that cannot be cured by better pleading. *See*

Dkt. No. 6 at 9; *see also Planck v. Schenectady Cty.*, No. 1:12-CV-0336, 2012 WL 1977972, *6 (N.D.N.Y. June 1, 2012). As such, Plaintiff's complaint is dismissed with prejudice. [3]

[3]    Since the Court is dismissing Plaintiff's complaint with prejudice, the Court will not address Plaintiff's objection to Magistrate Judge Dancks's denial of Plaintiff's motion for appointment of counsel.

**\*4** Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Dancks's Order and Report-Recommendation (Dkt. No. 6) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED in its entirety without leave to amend**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3172999

End of Document    © 2022 Thomson Reuters. No claim to original U.S. Government Works.